**E. B. PEEBLES, Jr., and Lee Baldwin Peebles, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 2622.

United States District Court
S. D. Alabama, S. D.

Aug. 31, 1962.

**386**

—◆—

Marshall J. DeMouy, of Armbrecht, Jackson, McConnell & DeMouy, Mobile, Ala., for plaintiffs.

Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Edward S. Smith, Myron C. Baum, and Hubert M. Doster, Attys., Dept. of Justice, Washington, D. C., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

This is a suit to recover from Defendant an over-payment of Federal Income Taxes collected from Plaintiffs for Plaintiffs' taxable year ended December 31, 1955. The sole issue for determination is whether a lump sum distribution received by E. B. PEEBLES, JR., Plaintiff-employee, in August 1955, from the retirement plan of Waterman Steamship Corporation should be taxed as a long term capital gain or as ordinary income.

Plaintiffs are husband and wife and reside in Mobile, Alabama. They filed a joint income tax return for the taxable year 1955, with the District Director of Internal Revenue, Birmingham, Alabama, on or before April 15, 1956. At the time of filing the return, Plaintiffs calculated the tax on a lump sum distribution from the Waterman Plan received by Plaintiff-employee in August 1955, at ordinary income tax rates and paid the full amount of tax shown to be due on the tax return. On or about April 11, 1959, and within the time required by law, Plaintiffs filed with the District Director of Internal Revenue, Birmingham, Alabama, on a United States Treasury Department Form 843, a claim for refund of Federal Income Taxes in the amount of $641.60, representing the difference between the taxes calculated on the Plaintiff-employee distribution from the Waterman Retirement Plan at ordinary income tax rates and at capital gain rates. Upon denial of the claim for refund, this suit was timely filed.

During the taxable year 1955 and for a number of years prior thereto Plaintiff-employee was on the payroll of Ryan Stevedoring Company, Inc., a wholly owned subsidiary of Waterman Steamship Corporation, and was a participant in the Retirement Plan of Waterman Steamship Corporation and certain of its subsidiary corporations.

On or about the 5th day of May, 1955, C. Lee Co., Inc., an Alabama.corporation, purchased more than 99 percent of the then outstanding common stock of Waterman Steamship Corporation for cash. Immediately after the sale, all previous directors and officers of Waterman Steamship Corporation resigned and the directors and officers nominated by C. Lee Co., Inc., were elected to take their places. The new directors of Waterman, on May 5, 1955, passed a resolution terminating the Waterman Retirement Plan but the termination was conditioned on a favorable determination by the Internal Revenue Service that the plan could be terminated without adverse tax consequences to Waterman or its subsidiaries. On July 26, 1955, the Internal Revenue Service ruled that termination of the plan would have no adverse tax effects.

On May 6, 1955, all previous directors of Ryan Stevedoring Company, Inc., resigned as directors and as officers of Ryan, and officers and directors nominated by C. Lee Co., Inc., were elected to take their places. On or about June 14th, 1955, one F. L. Leatherbury purchased from Waterman all of the outstanding capital stock of Ryan Stevedoring Company, Inc. On the day of the sale all of the officers and directors of Ryan Stevedoring Company resigned and new directors and officers nominated by F. L. Leatherbury were elected to take their places. F. L. Leatherbury was elected as President of Ryan. There then followed a financial reorganization of Ryan.

The relevant provisions of the Internal Revenue Code of 1954 are contained in Section 402(a) (1) and (2), 26 U.S.C.A. § 402(a) (1) and (2). The applicable part of paragraph (1) provides, that the amount distributed to a distributee of a tax exempt employee's trust shall be taxed to him in the year received as an annuity, but paragraph (2) provides as exception that "if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's * * * separation from the service * * * the amount of such distribution * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months."

The question is whether the amount received by Plaintiff-employee was paid to him on account of his separation from service, all other requirements for capital gains treatment under paragraph (2) being present.

This case falls within the doctrine of Thomas E. Judkins and Thelma Judkins v. Commissioner, 31 T.C. p. 1022, wherein the Court accorded capital gains treatment to a distribution from the Waterman Retirement Plan under facts similar to those here involved. The Internal Revenue Service acquiesced in Judkins but limited its acquiescence to instances where the employee's services were actually terminated. (See Internal Revenue Bulletin 1959–2 p. 5, Acquiescences, Thomas E. Judkins, et ux.) As stated by the Court in Judkins, the Tax Court and the Revenue Service have found a "separation from the service" within the meaning of Section 402(a) (2) where the retirement plan has been terminated due to a bona fide change in the ownership of the business, even though the employees in fact continued in their same jobs with the new owners.

The Court actually concluded in Judkins that the sale of the Waterman stock on May 5th to C. Lee, Inc., was a bona fide transfer of ownership and control of the business for cash and that, as a result of the sale, there was a termination of the Waterman Retirement Plan. I am in agreement with this conclusion and am of the opinion that distributions from the Waterman plan were made on account of "separation from the service of the employer" within the meaning of Section 402(a) (2).

The facts in the instant case uniquely parallel the facts in Judkins. As in Judkins, there was a termination of Plaintiff-employee's employment in this case prior to the termination of the plan on July 26, 1955, and before Plaintiff-employee received any distribution from the plan. Though the Plaintiff-employee was on the payroll of Ryan before and after June 14th, 1955, the date of the sale of Ryan to Leatherbury, the record is clear, and the Court so finds, that until the sale of the Ryan stock to Leatherbury, the Plaintiff-employee was actually an employee of Waterman Steamship Corporation, and that upon the sale to Leatherbury, the Plaintiff-employee's employment with Waterman was terminated as he then became an employee of Ryan.

Most of the points raised by the government in its brief were raised in Judkins and analysed and answered by the Court there. I have carefully considered all of the government's contentions, including those raised in Judkins, and do not find them persuasive in this action.

I am of the opinion that the distribution from the Waterman Retirement

Plan to the Plaintiff-employee was on account of the Plaintiff-employee's separation from the service of his employer within the meaning of Section 402(a)(2) of the Internal Revenue Code of 1954, and is taxable as a gain on the sale or exchange of a capital asset held for more than six months. Thus, the Plaintiffs are entitled to recover the amount sued for in the complaint plus interest and costs, as provided by law.