Ralph W. and Helen P. NELSON, and Ralph and Mabel M. Robacher, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

No. 2288.

United States District Court
D. Idaho, N. D.
Sept. 23, 1963.

Myron Anderson, Boise, Idaho, for plaintiffs.

Sylvan Jeppesen, U. S. Atty., Boise, Idaho, Joyle C. Dahl, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

TAYLOR, District Judge.

By this action plaintiffs seek recovery of income taxes alleged to have been overpaid for the calendar year 1958. Two taxpayers, Ralph W. Nelson and Mabel M. Robacher, are involved and joined in this action under Rule 20 of the Federal Rules of Civil Procedure because the issue involved arose out of a series of transactions common to both of them. Plaintiffs Helen P. Nelson and Ralph Robacher are parties only because they filed joint income tax returns with their respective spouses.

This cause has been submitted to the Court for determination on the pre-trial conference order filed herein and the written briefs of the parties.

The sole question for determination is whether lump sum distributions received by taxpayers from a pension trust fund of Liberty National Insurance Company, hereinafter referred to as Liberty National, are reportable as capital gain on the ground that they were received by reason of taxpayers separation from service of their employer within the meaning of section 402(a) (2) of the Internal Revenue Code of 1954.

On December 20, 1950, the Liberty National Insurance Company (formerly called the Idaho Compensation Company), created a pension trust plan for the benefit of its employees in which the employees participated. The taxpayers, as employees of the company for a number of years prior to the year 1958, were participants in the plan. Liberty National paid the insurance premium for the plan each year in advance and subsequently deducted each participants' contribution from salary or wages.

In the spring of 1956, the Department of Insurance for the State of Idaho determined that the Liberty National Insurance Company's liabilities greatly exceeded its assets and it was insolvent. The Insurance Commissioner for the State of Idaho notified the officers of Liberty National of the impairment of capital and gave them the required statutory time within which to make good this impairment. The company was unable to remedy its financial situation and on September 24, 1956, the Insurance Commissioner, under authority of Idaho law, procured a judgment and order from a State District Court to rehabilitate Liberty National. The State Court appointed the Commissioner as receiver and directed him to take possession of the assets of Liberty National and to administer the same under orders of the Court. Under such circumstances the Insurance Commissioner, by statute, is vested with title to all property, contracts, rights of action, and all books and records of the insurer wherever located as of the date of entry of the order directing him to rehabilitate or liquidate. Upon taking possession of the assets of an insurer, the receiver must immediately proceed to conduct the business of the insurer or to take such steps

as are authorized by the laws of the State of Idaho for the purpose of liquidating, rehabilitating, reorganizing, or conserving its affairs, subject only to the direction of the State Court.

The Insurance Commissioner appointed a special deputy insurance commissioner to proceed with the rehabilitation or liquidation of Liberty National. Upon assuming his duties he called all the employees of Liberty National before him and in substance advised them that as of that time he was in complete control of the assets of the corporation, the management of the business and they were responsible to him as rehabilitator.

After taking over possession and control of the business and assets of the corporation, the Deputy Insurance Commissioner requested and received possession of all of the outstanding shares of the corporate stock of Liberty National held by the then shareholders. In order to obtain capital for the corporation the Commissioner ultimately sold 19,461 shares of corporate stock to local persons not the original shareholders, and 38,377 shares to one Frank S. Becker, Jr. and Associates of New York City, and returned 2,162 shares to the original stockholders. As a result of these transactions 60,000 shares of stock were issued and outstanding. This method of recapitalizing the corporation resulted in a surrender by the original stockholders of all their original stock in Liberty National and the receipt by them of 3.6 per cent of the new stock issue. Thereafter, Frank S. Becker and Associates, having obtained control of the corporation, elected a Board of Directors and officers of their own choice. On May 28, 1957, the State District Court ordered the termination of rehabilitation and the return of the assets and conduct of the business of the corporation to the stockholders, officers and directors.

The insurance premium under the pension trust was paid by means of a premium loan for the year 1957. After the new directors and officers took over the management and control of the corporation, the continuance of the plan was considered and it was ultimately decided that the plan should be discontinued and it was terminated in May, 1958. The trustees of the plan then proceeded to distribute the trust funds to the employees of Liberty National Insurance Company. Plaintiffs Ralph W. Nelson and Mabel M. Robacher were paid lump sums in 1958 as their entire interest in the pension trust fund. It must be noted that the corporation was never liquidated and dissolved during the entire time hereinabove mentioned and that taxpayers remained employees of the corporation after the pension trust fund was distributed.

The answer to the question posed in this law suit depends upon the interpretation and meaning of section 402(a) (2) of the Internal Revenue Code of 1954, which provides:

"(a) Taxability of beneficiary of exempt trust.—

"(1) General rule.—Except as provided in paragraph (2), the amount actually distributed or made available to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities) except that section 72(e) (3) shall not apply. The amount actually distributed or made available to any distributee shall not include net unrealized appreciation in securities of the employer corporation attributable to the amount contributed by the employee. Such net unrealized appreciation and the resulting adjustments to basis of such securities shall be determined in accordance with regulations prescribed by the Secretary or his delegate.

"(2) Capital gains treatment for certain distributions.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to

the distributee within 1 taxable year of the distributee *on account of the employee's death or other separation from the service,* or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *" [Emphasis added.]

The precise issue to be determined is whether the taxpayers were separated from the service of Liberty National under the facts of this case and within the meaning of the statute.

The taxpayers first contend that they became separated from the service of Liberty National, within the meaning of section 402(a) (2), when all but 3.6 per cent of the stock of Liberty National was sold to persons other than those who owned stock in the corporation before rehabilitation. They rely upon Judkins v. Commissioner, 31 T.C. 1022 (1959). They also rely upon Peebles v. United States, (D.C.Ala., 1962) 208 F.Supp. 385; and Johnson v. United States (D.C.Ala., 1963) Civil No. 2498, January 3, 1963, 11 A.F.T.R.2d 1017, which were decided by the same district judge who adopted the rationale of the Judkins case.

In the Judkins case, Watermans Steamship Corporation's plan was terminated after 99 per cent of its stock was purchased by C. Lee Co., Incorporated. The taxpayers cite the case as holding that a bona fide transfer of ownership and control of a corporation constitutes a separation from the service within the meaning of section 402(a) (2), even though the employee-taxpayer continues in his same job with the new owners. In Judkins the Tax Court relied upon Miller v. Commissioner, 22 T.C.

293 (1954); Martin v. Commissioner, 26 T.C. 100 (1956), and revenue rulings promulgated after 1956, in which the court stated that it and the Internal Revenue Service had taken the following position:

"* * * that if an employee retirement plan was terminated incident to a corporate reorganization which amounts to an actual change in ownership of the business for cash, * * * distributions would be deemed to have been made on account of separation from the service of the employer for the purposes of Section 402(a) (2) of the 1954 Code."

In the Miller and Martin cases the employer corporation that initiated the pension plan was first liquidated by transfer of its assets to a purchasing corporation and then dissolved. In both cases the taxpayers were thereafter employed by the purchasing corporation, a new employer, in the same job. Those cases do not support what the taxpayers contend was the Tax Court's holding in the Judkins case.

■ This court's function is to give effect to the intent of Congress. An examination of section 402 reveals that it was not the intention of Congress to give long term capital gain treatment to every lump sum distribution of an entire interest in a pension trust fund when such distribution has been made solely because the plan is terminated. It is clear that such treatment is to be accorded only when there has been a separation from the service of the employer. Glinske v. Commissioner, (1952) 17 T.C. 562.

■ In attempting to determine when there is a separation from service the court must look to the phrase "on account of the employee's death or other separation from the service." A reasonable interpretation of this language is that the employee must be separated from the service of his employer either because of the employee's death or for reasons equally definite and certain. Here tax-

payers never ceased to be employees of their corporate employer, Liberty National Insurance Company, even though the management and control of the corporation did change. A corporation is an entity separate and distinct from its individual shareholders and the person managing and controlling it.

The issuance of new stock in Liberty National and the purchase of 96.4 per cent of it by persons other than those who owned stock before rehabilitation did not result in the creation of a new corporate employer. Liberty National had not ceased to exist at any time either during or after rehabilitation. No change in taxpayers' employment occurred because the corporate entity continued to exist and they continued to be employed by it. The fact that this reorganization was involuntary in the sense that shareholders, officers, and directors may not have given their express assent is immaterial because a voluntary reorganization would not 'have resulted in the creation of a new corporate employer. The change in ownership of stock of Liberty National which produced a change in its control did not constitute a separation from the service of that corporation within the meaning of section 402(a) (2). Distribution was made to the taxpayers on account of termination of the pension trust and not on account of separation from service. See McGowan v. United States (D.C.Wis., 1959), 175 F.Supp. 364, affd. (7th Cir., 1960) 277 F.2d 613.

The taxpayers also contend that Liberty National did not function as a corporation during rehabilitation because legal title and right to possession of all of its property was vested in the receiver who had the authority, subject only to approval of the State District Court, to liquidate and dissolve or reorganize Liberty National; that appointment of the receiver constituted a bona fide change in ownership and control of Liberty National and, therefore, a separation from the service within the meaning of section 402(a) (2). This Court cannot agree that there was such separation from service. The taxpayers again rely upon Judkins v. Commissioner, supra. As previously noted in this opinion, the test is whether there has been a separation from service, not whether there has been a change in the ownership and control of the corporation.

The precise question is whether the appointment of the receiver constituted a separation from the service. Here the state court ordered rehabilitation rather than liquidation and dissolution. Section 41–3307(1) of the Idaho Code provides that an order to rehabilitate a domestic insurer must direct the commissioner forthwith to take possession of the property of the insurer and to conduct the business thereof, and to take such steps, as the court may direct, toward removal of the causes and conditions which have made rehabilitation necessary. Although the appointment of the receiver operated to suspend the powers of the board of directors and officers in carrying on the corporate business, it is clear that the corporate business was in fact continued by the receiver. Thus, the receiver's obligation was two-fold: (1) to attempt to save as much as possible of the value of Liberty National after reorganizing the debt and capital structure for the benefit of the policyholders, creditors, stockholders, and the public, and (2) to manage its normal affairs during the period of rehabilitation. Title to Liberty National's property was vested in the receiver for the sole purpose of facilitating such management. His interest was not that of an owner.

Neither a substantial change in the ownership of the stock of Liberty National nor the appointment of a receiver caused a separation from the service of Liberty National by taxpayers within the meaning of section 402(a) (2). In the opinion of this Court the lump sum distributions received by taxpayers from the pension trust fund are not entitled to capital gain treatment.

Accordingly, plaintiffs are not entitled to have and receive anything. Defendant shall have judgment dismissing plain-

tiffs' complaint and cause of action, with prejudice, and for its costs incurred herein.

Counsel for defendant shall prepare Findings of Fact, Conclusions of Law and a proposed Judgment, serve copies of the same on counsel for plaintiffs, and submit the originals to the Court for approval.