UNITED STATES of America, Appellant,

v.

Ben MARTIN and Rachel T. Martin, Appellees.

No. 17564.

United States Court of Appeals Eighth Circuit.

Oct. 20, 1964.

Ralph A. Muoio, Atty., Dept. of Justice, Tax Division, Washington, D. C., made argument for appellant and filed brief with Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, and David O. Walter, Attys., Tax Division, Washington, D. C., and Miles W. Lord, U. S. Atty., and Leigh J. Gard, Asst. U. S. Atty., Minneapolis, Minn.

Melvin R. Harris, Minneapolis, Minn., made argument for appellees and filed brief.

Before VOGEL, VAN OOSTERHOUT and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The question presented by this appeal is whether the District Court erred in holding that a lump sum distribution made in 1955 to taxpayer Ben Martin [1] by his employer Waterman Steamship Corporation (Waterman) upon a tax exempt retirement trust was paid on account of his "separation from service" of his employer within the meaning of § 402 (a) (2) I.R.C.1954 [2] so as to qualify for preferential capital gains treatment.

The trial court's opinion finding for the taxpayer is reported at 229 F.Supp. 549.

---

1. Mrs. Martin is made a party by reason of having filed with her husband a joint income tax return for 1955.

2. § 402(a) (2) reads:
   "§ 402. Taxability of beneficiary of employees' trust
   "(a) Taxability of beneficiary of exempt trust.—
      \*     \*     \*     \*     \*
   "(2) Capital gains treatment for certain distributions.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee with-
   in 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.  \*  \*  \*"

The Government has taken this timely appeal from the judgment.

The facts, which are not in dispute, are fully and fairly set out in the trial court's opinion. Waterman in 1945 established a noncontributory retirement plan for its employees. The plan met all statutory requirements for an employees' trust, including those of § 401(a). Taxpayer, as a Waterman employee, was a participant in the pension plan.

On May 5, 1955, C. Lee Co. (Lee) purchased over ninety-nine per cent of Waterman's outstanding capital stock. As part of such purchase arrangement, all Waterman directors resigned and were replaced by newly elected Board of Directors and officers designated by Lee. Such new Board by resolution on May 5, 1955, terminated the pension trust. On August 1, 1955, taxpayer received a lump sum payment of $14,721.56 representing the balance standing to his credit as of the date of termination of the pension plan. On December 22, 1955, Lee merged into Waterman. Waterman was the surviving corporation. Taxpayer has been a Waterman employee continuously for some twenty-five years and was serving in such capacity at the same job at the time of trial.

Taxpayer reported the pension trust payment he received as ordinary income for 1955. He filed a timely claim for refund based upon his contention that the payment should be accorded capital gain treatment. The claim was denied. The trial court had jurisdiction over this timely suit for refund, 28 U.S.C.A. § 1346(a)(1), and this court has jurisdiction upon this appeal. 28 U.S.C.A. § 1291.

The key to the solution of this case lies in the proper interpretation of § 402(a)(2). Any right to the relief the taxpayer here seeks must be found in such section. Unless the taxpayer meets the requirements of § 402(a)(2), it is clear as conceded by the trial court that the pension trust payment is taxable as ordinary income.

Taxpayer's position is that the termination of the pension plan was a matter over which he had no control or influence and that the termination of the plan by the new Waterman management produced the same tax effect upon him as a termination of his employment by death, resignation or discharge. Taxpayer urges that Waterman, by reason of the stock ownership change in effect and substance went out of existence and that the result was a mass severance of employment within the teaching of Mary Miller v. Commissioner, 22 T.C. 293; Lester B. Martin v. Commissioner, 26 T.C. 100; Thomas E. Judkins v. Commissioner, 31 T.C. 1022; and certain revenue rulings set out in the trial court's opinion.

The Government's position is that no separation from taxpayer's service with Waterman has taken place and hence taxpayer is not qualified for § 402(a)(2) relief. It is undisputed that Waterman was the surviving corporation of the merger. Taxpayer has continued to be an employee of Waterman at the same job. While Waterman terminated the pension trust, it did not terminate taxpayer's employment or separate him from service. The Court of Appeals for the Fifth Circuit in United States v. Johnson, 5 Cir., 331 F.2d 943 and United States v. Peebles, 5 Cir., 331 F.2d 955,[3] was confronted with the identical statutory interpretation problem facing us involving the same Waterman pension trust.

The majority of the court's panel in Johnson, speaking through Judge Wisdom in a well-reasoned opinion, exhaustively considers the contentions here made. The court traces the legislative history of the pension trust statutes, sets out and discusses the revenue rulings relied upon by the taxpayer, and discusses and considers the pertinent authorities. On the statutory construction issue, the Johnson court quotes with approval from

---

3. Both of said cases were decided after the trial court's opinion in the present case and in each of said cases decisions of the District Court relied upon by the trial court were reversed.

Nelson v. United States, D.C.Idaho, 222 F.Supp. 712, as follows:

> " 'The Court's function is to give effect to the intent of Congress. An examination of section 402 reveals that it was not the intention of Congress to give long term capital gain treatment to every lump sum distribution of an entire interest in a pension trust fund when such distribution has been made solely because the plan is terminated. It is clear that such treatment is to be accorded only when there has been a separation from the service of the employer. Glinske v. Commissioner, (1952) 17 T.C. 562.

> " 'In attempting to determine when there is a separation from service the court must look to the phrase "on account of the employee's death or other separation from the service." A reasonable interpretation of this language is that the employee must be separated from the service of his employer *either because of the employee's death or for reasons equally definite and certain.* Here taxpayers never ceased to be employees of their corporate employer, Liberty National Insurance Company, even though the management and control of the corporation did change. A corporation is an entity separate and distinct from its individual shareholders and the person managing and controlling it.

> " ' * * * No change in taxpayers' employment occurred because the corporate entity continued to exist and they continued to be employed by it. The fact that this reorganization was involuntary in the sense that shareholders, officers, and directors may not have given their express assent is immaterial because a voluntary reorganization would not have resulted in the creation of a new corporate employer. * * * *Distribution was made to the taxpayers on account of termination of the pension trust and not on account of separation from service.* (Emphasis added.)' " 331 F.2d 943, 953.

Like the Fifth Circuit, we agree with the foregoing interpretation of the statute. When the statutory words creating capital gain treatment when lump sum payment is made "on account of employee's death or other separation from the service" are given their natural and well-understood meaning, we find no ambiguity and no basis to support the taxpayer's contention that such words encompass the situation where, as here, there was in fact no severance of the employer-employee relationship at the time the lump sum payment was made or thereafter.

■■ General rules of statutory construction apply to the construction of tax statutes. Where the meaning of a statute is clear, the statute must be enforced as written. See 1 Mertens, Federal Income Taxation, §§ 3.01, 3.02 and cases there cited.

The Supreme Court in Hanover Bank v. Commissioner, 369 U.S. 672, 687, 82 S.Ct. 1080, 1089, 8 L.Ed.2d 187, states: "A firmly established principle of statutory interpretation is that 'the words of statutes—including revenue acts— should be interpreted where possible in their ordinary, everyday senses.' Crane v. Commissioner, 331 U.S. 1, 6."

Consideration of the legislative history of the pertinent statute affords the taxpayer no aid or comfort. Such history is well summarized in Johnson and clearly supports the conclusion there reached, thus stated:

> "This authoritative construction focuses on termination of employment. And nowhere in the statutory language or in the legislative history can be found any intimation that a change of control and stock ownership is to be equated with the disappearance of the corporate entity in a complete liquidation or merger —or is tantamount to separation from service." 331 F.2d 943, 949.

The trial court's decision favoring the taxpayer seems to be based largely on general equitable principles as reflected by the following language.

"If we are to follow the authority holding a transfer of ownership a separation from service, we should not be put off by the form of the transaction, but make our decision on the basis of genuine transfers of ownership. If we are to reject this authority, the rejection should be based on an interpretation of the statute rather than on a distinction based on a corporate formality.

\* \* \* \* \* \*

"This decision favoring the taxpayer would seem to conform with the original congressional purpose for allowing capital gains treatment for lump sum distributions: relief from high progressive rates. Moreover, it would seem that the 'bunching' argument is the soundest one for allowing capital gains treatment as a matter of tax policy." 229 F.Supp. 549, 558.

■ The answer to the last paragraph of the foregoing quotation is that Congress by clear and unambiguous language has extended capital gains treatment only to certain limited situations where the employee has been separated from service by his employer. It is quite true that any lump sum payment on termination of a pension plan will result in a bunching up of income. An equitable argument can plausibly be made that all termination payments be treated alike, regardless of the cause for termination. However, it is well established that exemptions and deductions from gross income are matters of legislative grace and do not turn upon general equitable considerations. Statutory authority must be shown for such deductions and exemptions. Lewyt Corp. v. Commissioner, 349 U.S. 237, 240, 75 S.Ct. 736, 99 L.Ed. 1029; Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593, 63 S. Ct. 1279, 87 L.Ed. 1607; Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Oates v. Commissioner, 8 Cir., 316 F.2d 56, 58; Luehrmann's Estate v. Commissioner, 8 Cir., 287 F.2d 10, 15.

■■ A corporation is an entity separate and distinct from its stockholders and the persons controlling it. Nelson v. United States, supra; United States v. Johnson, supra. The separate entity of a corporation will ordinarily be recognized. The corporate entity will be disregarded only under exceptional circumstances such as where the corporation serves no legitimate business purpose and is used only as an intermediary to perpetrate fraud or promote injustice. G. E. J. Corp. v. Uranium Aire, Inc., 9 Cir., 311 F.2d 749, 756; In Re Gibraltor Amusements, Ltd., 2 Cir., 291 F.2d 22, 24; Francis O. Day Co. v. Shapiro, 105 U.S.App.D.C. 392, 267 F.2d 669, 673.

Waterman as a corporation served a legitimate business purpose. None of the transactions here set out is shown to have been fraudulent, illegal or improper in any respect. We agree with the view expressed in Johnson upon an identical factual background that there is no basis here for disregarding the corporate entity of Waterman.

■ Taxpayer contends that certain revenue rulings promulgated by the Commissioner in 1958, which rulings are discussed in the trial court's opinion and in Johnson, support his interpretation. As stated in Johnson, such rulings are ambiguous and confusing. We need not here determine whether they properly interpret the statute as none of said rulings extends the capital gain treatment to the factual situation here presented. In fact, Rev.Rul. 58–99, 1958–1 Cum. Bull. 202, described in the trial court's opinion at p. 556 of 229 F.Supp., supports the Government's contention that no capital gains treatment is to be afforded under the facts of this case. No purpose will be served by discussing the rulings. The taxpayer in 1955 could hardly have relied on rulings promulgated in 1958. Waterman was advised before the distribution that the payments made to its employees would be treated as ordinary income and Waterman attempted to communicate this information to its employees. In any event, the 1958 revenue rulings, to the extent that they con-

flict with the statute as we have interpreted it, are a nullity. Manhattan Gen. Equip. Co. v. Commissioner, 297 U.S. 129, 134–135, 56 S.Ct. 397, 80 L.Ed. 528; Northern Natural Gas Co. v. O'Malley, 8 Cir., 277 F.2d 128, 134.

 By way of summary, we hold that under § 402(a) (2) as fairly interpreted, capital gains treatment is not accorded to lump sum payments made out of exempt noncontributory trusts to employees who have not been separated from their employer's services. Since it is undisputed that Waterman's corporate status remained unimpaired after the change in ownership in its controlling stock and the subsequent merger of Lee into Waterman, with Waterman the surviving corporation, and it further conclusively appears that at all times here material the employer-employee relationship between Waterman and the taxpayer remained intact, taxpayer has not brought himself within the relief provisions of § 402(a) (2). Taxpayer is not entitled to capital gains treatment on the lump sum pension trust payment made to him in 1955.

The judgment is reversed.