E. N. FUNKHOUSER and Estate of Nellie S. Funkhouser, Deceased, E. N. Funkhouser, Executor, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 10330.

United States Court of Appeals
Fourth Circuit.

Argued May 5, 1966.

Decided March 15, 1967.

Lawrence A. Kaufman, Baltimore, Md. (John W. Cable, III, and John S. McDaniel, Jr., Baltimore, Md., on brief), for petitioners.

**2**

Anthony Zell Roisman, Atty., Dept. of Justice (C. Moxley Featherston, Acting Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, on brief), for respondent.

Before SOBELOFF and BRYAN, Circuit Judges, and FIELD, District Judge.

FIELD, District Judge:

This petition for review of a decision of the Tax Court of the United States presents as its only issue whether two lump-sum distributions received by petitioner, E. N. Funkhouser, during the year 1959 from a pension trust were paid to him "on account of * * * separation from the service" within the meaning of Section 402(a) (2) of the Internal Revenue Code of 1954 and therefore entitled to capital gain treatment, or were properly taxable as ordinary income. The Tax Court resolved this issue in favor of respondent and we affirm. There is no dispute as to the facts and they were stipulated in their entirety before the Tax Court.

Petitioner was a director and a principal executive officer of R. J. Funkhouser and Company, Incorporated, from January 2, 1929, the date of its incorporation under the laws of the State of Maryland, until October 31, 1958, when it ceased to exist by reason of its merger with The Funkhouser Company. He was also a director and a principal executive officer of The Funkhouser Company from October 6, 1927, the date of its incorporation under the laws of the State of Maryland, until January 5, 1959. The business of The Funkhouser Company consisted primarily of producing rock granules used in the manufacture of asphalt roofing and for other purposes, and the business of R. J. Funkhouser and Company, Incorporated, consisted principally of the sale of the products manufactured or produced by The Funkhouser Company. On October 1, 1958, the outstanding stock of both corporations was owned or controlled to a large degree by petitioner and R. J. Funkhouser together with members of their respective families.

On October 3, 1958, these two corporations entered into an agreement with The Ruberoid Co., a New Jersey corporation, under which agreement Ruberoid was to acquire all of the assets of The Funkhouser Company and R. J. Funkhouser and Company, Incorporated, in exchange for shares of stock of Ruberoid, and assumption of liabilities together with a cash payment sufficient to satisfy certain tax liabilities of the Funkhouser corporations. As a first step in carrying out this agreement with Ruberoid, R. J. Funkhouser and Company, Incorporated, was merged into The Funkhouser Company on October 31, 1958. Thereafter the agreement with Ruberoid was amended to some degree with respect to the elimination of any cash payment by Ruberoid to The Funkhouser Company and for the retention by the latter corporation of sufficient cash to pay its estimated tax liabilities. On December 24, 1958, the Commissioner of Internal Revenue issued a ruling letter to the effect that the merger of the two Funkhouser corporations and the proposed transfer of assets of the surviving corporation to Ruberoid constituted tax-free reorganizations. The transfer of assets by The Funkhouser Company to Ruberoid as well as the assumption of the liabilities pursuant to the agreement occurred on January 5, 1959, and thereafter Ruberoid operated the business theretofore conducted by The Funkhouser Company.

Pursuant to the agreement of October 3, 1958, The Funkhouser Company amended the certificate of incorporation on January 5, 1959, to change its corporate name to "E. N. Funkhouser & Co., Inc." Also pursuant to the agreement, Ruberoid on or about February 15, 1959, issued 120,098 shares of its stock to E. N. Funkhouser & Co., Inc., in exchange for the assets transferred to it. One hundred and ninety-eight shares of this stock were sold and the proceeds used to defray certain expenses, and on March 9, 1959, the remaining 119,900 shares were distributed pro rata to the stockholders of E. N. Funkhouser

& Co., Inc. Since the date of that distribution this corporation has been dormant and has not conducted any business although it has not been formally dissolved.

During the time of their active corporate existence, on December 20, 1946, R. J. Funkhouser and Company, Incorporated, and The Funkhouser Company each entered into separate pension trust agreements which established a non-contributory pension plan and trust for the benefit of the full time salaried employees of the respective corporations. Each such pension trust agreement was amended from time to time, and as so amended satisfied the requirements of Section 165 (a) of the Internal Revenue Code of 1939 and Section 401(a) of the Internal Revenue Code of 1954, at all times material hereto. Benefits were payable to a participating employee or his beneficiary in the event of the employee's death, retirement or other termination of employment with the "Corporation," as that term is defined in the respective pension trust agreements, or upon termination of the plan. Petitioner was an eligible employee under each pension trust agreement and the Trustee obtained income continuation policies for the purpose of providing to petitioner the benefits to which he was entitled under the pension trust agreements. Petitioner became 65 years of age in 1956 and thereupon became entitled to retirement benefits under the provisions of the pension trust agreements. However, the benefits payable to him were postponed in accordance with the terms of the agreements, and no contributions were thereafter made in behalf of the petitioner by either "Corporation."

Each of the pension trust agreements provided that in the event the "Corporation" should be dissolved or merged into or with another corporation which did not assume the obligation of the pension trust, the pension trust would automatically terminate. By agreement dated October 31, 1958, between R. J. Funkhouser and Company, Incorporated, and The Funkhouser Company, it was provided that upon the merger of these corporations becoming effective the obligations of R. J. Funkhouser and Company, Incorporated, under its pension trust agreement would be assumed by The Funkhouser Company and such pension trust would be consolidated into and become a part of the pension trust of The Funkhouser Company. The Trustee under both such pension trust agreements consented thereto and agreed to be bound by its provisions.

On December 19, 1958, The Funkhouser Company and the Trustee executed amendments to the pension trust agreement of The Funkhouser Company, the purpose of which was to provide for the contemplated assumption by Ruberoid of the obligations of The Funkhouser Company under such pension trust agreement upon the transfer to Ruberoid of all of the assets of The Funkhouser Company. The amendments were, in part, as follows:

"3

The preamble to such Pension Trust Agreement (being the paragraph entitled 'Parties to the Agreement') shall be amended by inserting in the first parenthetical phrase immediately following the word 'Corporation' the following words 'which term shall also be construed to mean and include in substitution for The Funkhouser Company any corporation which shall have purchased all or substantially all of the assets of The Funkhouser Company and which shall have become the employer of substantially all of its employees and which shall assume the obligation of this Pension Trust.'

"4

Paragraph NINETEENTH shall be amended by adding at the end thereof the following sentence:

" 'Notwithstanding anything to the contrary heretofore in the Paragraph NINETEENTH contained this Pension Trust shall not terminate and no distribution of its assets by the Trustee shall be made upon the dissolution,

bankruptcy, insolvency or merger, as aforesaid, of The Funkhouser Company if prior to the occurrence of any of such events any other corporation shall have been substituted for The Funkhouser Company as the Corporation hereunder.' "

Prior to October 3, 1958, Ruberoid had in effect a qualified contributory pension plan, providing for retirement benefits for its employees. In connection with the acquisition of the assets of The Funkhouser Company by Ruberoid, Ruberoid on or before January 5, 1959, (a) amended such existing qualified pension plan so as to make provisions for the former employees of The Funkhouser Company who became employed by it following the acquisition of such assets; (b) assumed the pension trust agreement of The Funkhouser Company, as amended to include the pension trust agreement of R. J. Funkhouser and Company, Incorporated, as well as the obligations thereunder and became the "Corporation" as that term was defined in said pension trust agreement as amended; and (c) placed all of the annuity contracts held by the Trustee under the pension trust agreement of The Funkhouser Company on a paid-up basis to be held for distribution to the employees upon termination of their employment.

On March 9, 1959, the administrative committee of the retirement plan for employees of Ruberoid issued a direction that any Ruberoid employee who was formerly an employee of The Funkhouser Company and who, on December 31, 1958, was enrolled and participated in The Funkhouser Company pension trust agreement and who had attained the age of 60½ years, but had not attained the age of 65 years, should be eligible to enroll as a contributing participant in the retirement plan of the employees of Ruberoid. On August 26, 1959, the pension trust agreement originally made between The Funkhouser Company and the Trustee was further amended by agreement between Ruberoid and the Trustee to provide for the handling of dividends and refunds on the annuity contracts held

thereunder and for the distribution of such contracts upon any termination of employment.

On January 5, 1959, there were 174 employees of The Funkhouser Company under the age of 65 for whose benefit annuity contracts were held under The Funkhouser Company pension trust agreement, as amended to include the pension trust agreement of R. J. Funkhouser and Company, Incorporated. In addition, annuity contracts were also held for the benefit of the petitioner and R. J. Funkhouser, both of whom were then over 65 years of age. There were no other employees of The Funkhouser Company, including former employees of R. J. Funkhouser and Company, Incorporated, who had attained the age of 65 years on January 5, 1959. Subsequent to January 5, 1959, a substantial number of former employees of The Funkhouser Company retired or otherwise ceased to be employed by Ruberoid and received a distribution of benefits under The Funkhouser Company pension plan. The Funkhouser Company pension trust agreement as assumed by Ruberoid continued in effect and existence, and as of October 30, 1964, the Trustee thereunder held annuity contracts for the benefit of the 70 former employees of The Funkhouser Company who were still employed by Ruberoid at that time.

Petitioner became employed by Ruberoid as a director and consultant as of the effective date of the acquisition by Ruberoid of the assets of The Funkhouser Company, and continued to be so employed during the calendar years 1959, 1960 and 1961, receiving compensation from Ruberoid for his services at the rate of $15,000 per year. Subsequent to 1961, the petitioner served Ruberoid only in the capacity of a director receiving only director's fees in connection therewith. Since petitioner was over 65 years of age on January 1, 1959, he was not eligible to participate in the Ruberoid pension plan and, accordingly, was never covered by that plan.

Subsequent to April 10, 1959, and prior to June 4, 1959, petitioner requested the

Trustee under the former Funkhouser pension trust agreement to surrender one of the policies carried for petitioner's benefit thereunder for cash, and on August 19, 1959, he made a similar request of the Trustee with respect to the second policy carried for his benefit under the agreement. Pursuant to these requests the Trustee surrendered the policies and on or about June 4, 1959, delivered to petitioner a check in the amount of $16,854.30, and on or about October 15, 1959, the Trustee delivered to petitioner a second check in the amount of $39,906.83.

The aggregate amount of $56,761.13 so received by petitioner was reported on his 1959 joint return[1] as a long-term capital gain. Respondent determined a deficiency against the taxpayers for that year, proposing that the distributions were taxable as ordinary income which resulted in a disputed tax item of $27,374.35.

As heretofore stated, the parties stipulated that the pension trust agreements of both Funkhouser corporations were qualified under Section 165(a) of the Internal Revenue Code of 1939 and Section 401(a) of the Internal Revenue Code of 1954, at all times material hereto, so that all pension trust distributions would be taxable at ordinary income rates under Section 402(a) (1) of the 1954 Code, except as provided in Section 402(a) (2) as follows:

"§ 402. Taxability of beneficiary of employees' trust

"(a) Taxability of beneficiary of exempt trust.—

\* \* \* \* \* \*

"(2) Capital gains treatment for certain distributions.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, \* \* \* the amount of such distribution, to the extent exceeding the amounts contributed by the employee \* \* \* shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months.

\* \* \* ."

The legislative background and the history of the somewhat controversial interpretation of this Section have been set forth in United States v. Johnson, 331 F.2d 943 (5 Cir. 1964) and need not be reviewed by us in the disposition of the present case.

Petitioner relies to a large degree on the cases of Mary Miller, 22 T.C. 293 (1954), aff'd 226 F.2d 618 (6 Cir. 1955) and Lester B. Martin, 26 T.C. 100 (1956), but we agree with the Tax Court that the principle of those cases does not support petitioner's position on the facts presented here. The rationale of those decisions was succinctly stated in Thomas E. Judkins, 31 T.C. 1022 (1959) at 1028:

"Both this Court and the Internal Revenue Service have recognized the plight of employee-participants in retirement plans that have been terminated due to a bona fide change in the ownership of the business and have found a 'separation from the service' within the meaning of this Code provision even though the employees in fact continued in their same jobs with the new owners."

While it is true that in the present case there was a bona fide change in the ownership of the business, it is clear that the corporate principals carefully and specifically took the contractual steps necessary to continue the Funkhouser pension trust in existence under Ruberoid, and by virtue thereof on or before January 5, 1959, Ruberoid became

---

1. Petitioner and his wife, Nellie S. Funkhouser, filed joint returns with the district director at Baltimore. The wife has since died, and the petitioner appeared before the Tax Court both in his own right and as executor of his wife's estate.

**6**

the "Corporation" under the terms of the Funkhouser pension trust agreement. The trust was in nowise terminated incident to the change of business ownership, and petitioner continued in the employ of Ruberoid in fact as well as in respect of the pension trust. Under these circumstances petitioner falls well within the pattern of those cases in which Section 402(a) (2) has been held inapplicable. See Rybacki v. Conley, 340 F.2d 944 (2 Cir. 1965); Clarence F. Buckley, 29 T.C. 455 (1957); Edward Joseph Glinske, 17 T.C. 562 (1951).

■ Additionally, assuming, arguendo, that the petitioner was separated from the service of The Funkhouser Company, we agree with the Tax Court that he has failed to carry his burden of proving that the distributions in question were made to him "on account of" such separation. As pointed out in the stipulated facts, petitioner had attained the requisite retirement age of 65 in the year 1956, and was entitled to his full retirement benefits under the agreements at that time. The payment of such benefits was postponed pursuant to section "Eleventh" of the agreements merely because it was the desire of the petitioner to continue in the active employment of the corporation. At any time after 1956, petitioner could have obtained his full retirement benefits under the pension trust by terminating his active employment, an election that rested solely in him both before and after the Ruberoid transaction. The fact that for some unexplained reason the Trustee complied with petitioner's requests and made the distributions to him while he was still an active employee of Ruberoid and while the pension trust was still in existence indicates to us that the distributions were made "on account of" something other than his "separation from the service." Cf. Estate of Frank Fry, 19 T.C. 461, aff'd. 205 F.2d 517 (3 Cir. 1953).

In any event, it is clear that section 402(a) (2) does not apply to the distributions here in question.

Affirmed.