William L. **HAGGART** and Marjorie Haggart, Plaintiffs,

v.

B. J. **ROCKWOOD**, as District Director of Internal Revenue, Martin Webb as District Director of Internal Revenue, and United States of America, Defendants.

Civ. No. 4181.

United States District Court
D. North Dakota,
Southeastern Division.

Aug. 17, 1967.

———◆———

J. Gerald Nilles, of Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, N. D., for plaintiffs..

John DeBruyn, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., and John O. Garaas, U. S. Atty., for the District of North Dakota, Fargo, N. D., by Richard V. Boulger, Asst. U. S. Atty., for defendants.

MEMORANDUM AND ORDER

REGISTER, Chief Judge.

This suit for the recovery of federal income taxes paid by Plaintiffs was tried to the Court on April 5, 1967. The sole issue involved is the proper treatment of a distribution made to the taxpayer, William L. Haggart, out of an employees' trust which was qualified under Section 401(a), and which was exempt from tax under Section 501(a) of the Internal Revenue Code—i. e., should such distribution be afforded capital gain treatment as distinguished from ordinary income treatment under Section 402(a)(2) of the Internal Revenue Code.

The jurisdictional and pertinent facts have been stipulated into the record and appear in Plaintiff's Exhibit 1. No purpose would be served by copying that stipulation into this memorandum but, by reference the same is made a part hereof.

The basic facts relating to the issue as above stated are as follows: In 1949 Northwest Motor Service Company, a North Dakota corporation, created a profit-sharing plan which was qualified under Section 401(a) and exempt from tax under Section 501(a) of the Internal Revenue Code. Plaintiff William L. Haggart was a participant in and beneficiary of said Employees' Trust. On December 31, 1963, Northwest adopted a plan of reorganization, the pertinent elements of which were (1) Northwest sold all its assets to the Virginia Corporation, a Florida Corporation, in exchange for stock of the Virginia Corporation, (2) the stock acquired from Virginia was in turn distributed to the stockholders of Northwest, and (3) pursuant to the North Dakota Business Corporation Act Northwest filed its notice of intention to dissolve and a certificate of dissolution, and as part of the plan was in fact dissolved. Northwest Motor Employees' Trust, at the direction of its advisory committee, was distributed in a lump sum within one taxable year of the distributee taxpayer. Plaintiff William L. Haggart reported this distribution on his 1963 federal income tax return as an item of capital gain rather than as ordinary income.

Section 402(a) (2) of the Internal Revenue Code provides as follows:

"Capital gain's treatment for certain distributions.—In the case of an employees' trust described in section 401 (a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, * * * the amount of such distribution, * * * shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months."

The determinate fact question is thus narowed to whether or not the subject distribution was paid to the taxpayer on account of his "separation from the service" of Northwest Motor Service Company.

In support of his contention that he was in fact separated from the service of Northwest—and thus eligible to take advantage of the provisions of Section 402(a)(2)—taxpayer cites and relies on the cases of Miller v. Commissioner, 22 T.C. 293, aff'd sub nom. C.I.R. v. Miller, 6 Cir., 226 F.2d 618 (1955), and Martin v. Commissioner, 26 T.C. 100, with emphasis also placed on Revenue Ruling 65–147 and the discussion of the Court in Funkhouser v. C.I.R., 4 Cir., 375 F.2d 1 (1967). In support of its position, Defendant places major reliance on United States v. Martin, 8 Cir., 337 F.2d 171 (1964), United States v. Johnson, 5 Cir., 331 F.2d 943 (1964), and Nelson et al. v. United States, D.Idaho,N.D., 222 F.Supp. 712 (1963).

No attempt will be made to analyze, distinguish factually or reconcile the many cases cited in the parties' briefs, all of which are carefully and ably prepared and which forcefully present the parties' respective positions. After carefully considering the briefs and all the cases therein cited, this Court is persuaded that *Miller,* supra, and Martin v. Commissioner, supra, delineate the law applicable to this case, and that the Internal Revenue Service has recognized this conclusion in its issuance of Revenue Ruling 65–147.

■ As pointed out by Plaintiff taxpayer in his post-trial brief, the distribution involved herein was not made at the instance of the corporate employer (Northwest Motor Service Company). That corporation took no action relative to the distribution, but

"* * * merely advised the Trustee (of the Employees' Trust) and the advisory committee that the statutory dissolution of the corporation was

about to take place. The Trust instrument itself provides that all benefits of the employee shall vest upon his termination of service with the company. The only matter that remained then for the advisory committee to determine was as to the mode of payment to the participant, Haggart. The Trust instrument itself vested in the advisory committee the power to make a lump sum payment or to make installment payments or to purchase annuity for the employee, payable at age 65. According to the stipulated facts, the advisory committee deemed it for the best interests of all employees that a lump sum payment be made, and, accordingly authorized and directed the Trustee to make such distribution. Such distribution was made within one taxable year of the taxpayer, in a single lump sum." (Plaintiff's post-trial Brief, p. 5.)

The employer corporation did in fact dissolve and cease to exist as an entity. Subsequent to such dissolution, the taxpayer performed no services for his former employer and received no compensation from it. This Court finds as a fact that the distribution was made to the taxpayer, Haggart, because of " * * * his termination of service with the company" (Trust instrument)—i. e., "on account of his separation from the service" of his employer.

■ This Court agrees with the Defendant and recognizes the law to be that " * * * if the former corporation continued in existence and the employee continues in its service there is no 'separation from the service.'" (Defendant's post-trial Brief, p. 6.), and that "When the former corporate employer is succeeded by the acquiring corporation and it continues but subsequently terminates the profit-sharing or pension plan, then the distribution is not 'on account of' any change in employers." (Defendant's post-trial Brief, p. 6.) In fact, though these propositions of law—with supporting authority—are cited, Defendant concedes that " * * * the taxpayer succeeded in avoiding these two pitfalls,

* * * ". (Defendant's post-trial Brief, p. 6.)

Defendant's reliance upon *Johnson,* supra, apparently results from an interpretation of the comments of the writer of the majority opinion—rather than from the determination of the issue therein—and from comments of the Court in United States v. Martin, supra, referring favorably to *Johnson.*

■ It is readily apparent from a reading of United States v. Martin, and *Johnson,* supra, that those cases are factually distinguishable from the instant case. In this case it is clear that the employer corporation's existence as a legal entity did in fact terminate; that the employer-employee relationship which had existed between it and the taxpayer had ceased; that the taxpayer's employment by the employer corporation had in fact terminated; that the taxpayer had separated "from the service of the employer"; and that the distribution was made on account of the taxpayer's separation from such service. It is a fact that following separation from the service of Northwest—after dissolution of the corporate employer and after distribution of the subject fund—the taxpayer continued in his previous relationship with another corporation which had acquired the assets of the dissolved corporate employer. However, this Court is unable to read into the statute any effect such action would have upon the determination of the issue now before it.

At page 17 of its post-trial Brief, Defendant states:

"Here taxpayer's transactions do not fulfill either the 'substantial change in the beneficial ownership' or the 'substantial change in the make-up of the employees' tests."

The implied premise is that, in order that the distribution be entitled to capital gains treatment the taxpayer, in addition to having been separated from the service of his employer, must also establish facts satisfying the requirements of one of these "tests". The statute involved is phrased in concise, unambigu-

ous and well-understood language. It contains no such requirement in either specific or general terms; it says nothing about the existence or requirement of compliance with either "test".

In discussing the Internal Revenue Code of 1954 the Court in *Johnson*, supra, 331 F.2d at page 949, said:

"In any event, as the Senate Committee has said, there is no separation from service incident to any 'reorganizations [even complete liquidations] which do not involve a substantial change in the make-up of employees' ".

This quotation, relied upon by Defendant, must be read in the context of the *Johnson* case and in light of the facts therein found. In that case there occurred a ninety-nine percent change in stock ownership of the employer corporation; on the same date the retirement plan involved was terminated. However, it was therein found as a fact that the employer's corporate existence continued as prior to the change in stock ownership, as did the employer-employee relationship with the taxpayer. The taxpayer contended that the change in stock ownership was tantamount to "separation from the service" of his employer, and that the lump sum distribution from the retirement plan received by him should be accorded capital gains treatment. The Court disagreed with this proposition; however, under no theory can it be deduced that the Court therein held that in order that there be a "separation from the service" there must *also* be "a substantial change in the make-up of employees". That Court also said (p. 954 of 331 F.2d):

"Within the meaning of Section 402, this mere change of stock ownership and control did not effect such a 'substantial change in the make-up of employees' as to constitute a mass severance of the employees from their employer."

Such language does not mean that either a "substantial change in the make-up of employees" or a "mass severance of the employees from their employer" is a requisite condition for "separation from the service". With reference to "mass severance", it may be noted that testimony at the trial herein disclosed that, at the time of the distribution of the Employees' Trust fund, there remained five participants, all of whom received lump sum distributions at the same time as the taxpayer (though the employer-employee relationship of some had terminated several years prior thereto).

This Court is also of the opinion that a careful analysis and consideration of the opinion by Circuit Judge Van Oosterhout in United States v. Martin, supra, discloses no support for Defendant's contentions. The facts and result in *Martin* were similar to those in *Johnson*. Waterman, as the corporate employer, was the surviving corporation of a merger. Following such merger, taxpayer continued in the employ of Waterman, at the same job. Following the merger, Waterman terminated the pension trust but did not terminate taxpayer's employment or separate him from the service. As did the Court of Appeals for the Fifth Circuit in *Johnson*, supra, Judge Van Oosterhout quoted with approval from *Nelson*, supra, concerning construction of the involved statute, and followed such quotation with the statement that:

"Like the Fifth Circuit, we agree with the foregoing interpretation of the statute."

The holding of the Court in United States v. Martin, supra, was summarized as follows:

"By way of summary, we hold that under Section 402(a) (2) as fairly interpreted, capital gains treatment is not accorded to lump sum payments made out of exempt noncontributory trusts to employees who have not been separated from their employer's services. Since it is undisputed that Waterman's corporate status remained unimpaired after the change in ownership in its controlling stock and the subsequent merger of Lee into Waterman, with Waterman the surviving corporation, and it further conclusively appears that at all times here

material the employer-employee relationship betwen Waterman and the taxpayer remained intact, taxpayer has not brought himself within the relief provisions of [Section] § 402(a) (2). Taxpayer is not entitled to capital gains treatment on the lump sum pension trust payment made to him in 1955."

Judgment in favor of the Plaintiffs is compelled by application of the principles set forth in *Miller,* supra, and Martin v. Commissioner, supra, and recognized by rulings of the Internal Revenue Service. Such conclusion is, in the opinion of this Court, wholly consistent with the result in *Johnson, Nelson,* United States v. Martin, supra, and other authority cited by Defendant.

Counsel for Plaintiffs will forthwith prepare and submit appropriate findings of fact, conclusions of law, order for judgment and judgment.

It is so ordered.