MAURICE OSTERMAN AND ELLA K. OSTERMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5112–66. Filed September 26, 1968.

*Arnold B. Gardner*, for the petitioners.
*Stephen M. Miller*, for the respondent.

SIMPSON, *Judge:* The respondent determined deficiencies in the income tax of the petitioners of $1,523.06 for the taxable year 1961 and $5,045.75 for the taxable year 1962. The only issue remaining for decision is whether a distribution received by the petitioner Maurice Osterman in 1962 from an exempt employees' pension trust was made "on account of" his "separation from the service" within the meaning of section 402(a)(2) of the Internal Revenue Code of 1954[1] so as to entitle him to capital gains treatment of the distribution.

FINDINGS OF FACT

Some of the facts were stipulated, and those facts are so found.

The petitioners are individuals who were residents of Williamsville, N.Y., at the time the petition was filed in this case. They filed joint Federal income tax returns for the taxable years 1961 and 1962 with the district director of internal revenue, Buffalo, N.Y. Maurice Osterman will be referred to as the petitioner.

---

Prior to January 1, 1958, the petitioner was employed as sales manager of the Charles S. Jacobowitz Corp. (Jaco). At that time, the Jacobowitz family also had substantial interests in Arnold Equipment Co., Speedways Conveyors, Inc., Louis DeMarcus Corp., and Niagara Filter Corp. All of these corporations were associated with Jaco in dealing in new and used brewery equipment. Each corporation was operated as a separate business, but there was an interchange of employees among them. Several of the corporations participated in the pension plan involved in this case.

On January 1, 1958, the petitioner purchased all of the outstanding stock of Jaco and took over the operation of its business, together with its inventory and equipment. At that time, he became the sole stockholder, president, and general manager of Jaco.

As part of the sale agreement, the sellers of Jaco agreed not to compete in the used equipment field for a period ending December 31, 1962, and the petitioner and Jaco agreed not to compete with the sellers in the new equipment field for the same period. After the sale of Jaco, it continued to engage in the purchase and sale of used machinery and equipment at the same location. However, the other Jacobowitz corporations that had previously shared that location were moved after September 1961. The petitioner continued with his previous duties, augmented by new duties as the chief executive officer of the corporation. In 1958, Jaco had 30 full-time employees; in 1959, 28; in 1960, 19; in 1961, 13; and in 1962, 12. On March 28, 1960, the name of the corporation was changed to Jaco Equipment Corp.

Prior to the petitioner's purchase of the Jaco stock, the corporation had established and maintained a pension plan which contained an employees' trust that was exempt from tax under section 501(a). As of January 1, 1958, the plan covered the following persons: Arnold Jacobowitz, James Lovelace, Michael Cutrone, Robert D'Anthony, Eric Loeb, Maurice Osterman, and Thomas Urmson.

The plan continued in existence after January 1, 1958, with no changes except as to the persons covered by the plan. Immediately after the sale of the business, Arnold Jacobowitz terminated his employment with Jaco and his participation in the plan. At the same time, Eric Loeb dropped out of the plan but remained in the employ of Jaco. Robert D'Anthony retired from Jaco and the Jacobowitz corporations on April 1, 1960, and received a lump-sum distribution of his interest in the pension plan. On July 16, 1960, Thomas Urmson left the employ of Jaco and received a lump-sum distribution of his interest in the pension plan. The petitioner's entire interest was distributed to him in a lump sum on February 1, 1962, resulting in a gain of $25,309. The plan was terminated in 1963. Michael Cutrone received a lump-sum distribution of his interest in the plan in that year, and James

Lovelace elected to receive his interest in 10 annual installments beginning in 1964.

After the petitioner purchased Jaco, it continued to make contributions to the pension plan for those persons still covered, one of whom was the petitioner. In 1958, Jaco's total payment to the plan was $6,339.17; in 1959, $7,202.17; in 1960, unknown; in 1961, $2,341.05; and in 1962, $144.93. After 1960, the other corporations that had previously participated in the plan made no further contributions to it.

OPINION

The issue is whether the petitioner is entitled to capital gains treatment on the gain realized from the lump-sum distribution of his interest in the Jaco pension plan.

Generally, an employer's contributions to a pension plan described in section 401(a) and exempt under section 501(a) are not taxable to the employees when made; taxation is postponed until the employees receive distributions. The distributions are generally taxable as ordinary income. See sec. 402(a)(1); *United States* v. *Johnson*, 331 F. 2d 943 (C.A. 5, 1964). However, section 402(a)(2) provides that some distributions are taxable as long-term capital gains.

SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.
(a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

\*          \*          \*          \*          \*          \*          \*

(2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, \* \* \* the amount of such distribution, to the extent exceeding the amounts contributed by the employee \* \* \* shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. \* \* \*

The parties agree that the Jaco trust was an employees' trust described in section 401(a) and was exempt from tax under section 501(a) at the time of the distribution to the petitioner and that he received a total distribution of his interest within 1 taxable year. Thus, the case turns on whether the distribution from the trust to the petitioner in 1962 was made on account of his "separation from the service."

Not every lump-sum distribution by an exempt employees' pension trust is entitled to the capital gains treatment, even though it represents the bunching of income. The statute restricts that right to those lump-sum distributions that are made on account of a separation from service. What constitutes "a separation from service" and when is a distribution "on account of" a separation from service are questions that have provoked many controversies. The provision allowing capital

gains treatment for total distributions on account of a separation from service was enacted in 1942. The accompanying committee report stated that a separation from service occurs when the employee "severs his connection with his employer" (S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), 1942–2 C.B. 607), but this explanation has failed to answer the many questions that have arisen.

On several occasions, it has been held that a change in the ownership of a corporation does not of itself result in a separation from service. *United States* v. *Johnson, supra; United States* v. *Martin,* 337 F. 2d 171 (C.A. 8, 1964) ; *Harry K. Oliphint,* 24 T.C. 744 (1955), affirmed per curiam on another issue 234 F. 2d 699 (C.A. 5, 1956). In a recent decision by this Court, we held that a mere change in the legal employment relationship, as well as a change in the ownership of the business, did not cause a separation from service. *Victor S. Gittens,* 49 T.C. 419 (1968). Our holding relied heavily upon the enactment of section 402(e) and the accompanying committee report. Section 402 (e) allows capital gains treatment for total distributions occurring in 1954 as a result of the termination of a plan due to the liquidation of a corporation, but the accompanying committee report indicates that capital gains treatment is not to be allowed for other distributions resulting from "reorganizations which do not involve a substantial change in the makeup of employees." S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 54 (1954). From the limited applicability of section 402(e) and the committee report, we inferred that a separation from service does not occur when there is no substantial change in the makeup of the employees, even though there is a change in the legal employment relationship and a change in the ownership of the business.

In support of his position in this case, the petitioner argues that there was a change in the ownership of the business, a change in the business, and a substantial change in the makeup of the employees. He also relies upon *Greenwald* v. *Commissioner,* 366 F. 2d 538 (C.A. 2, 1966), affirming in part and reversing in part 44 T.C. 137 (1965). In 1953, Mr. Greenwald's employer sold its entire manufacturing business, and 59 of the 60 employees transferred with the business. Only Mr. Greenwald remained with the employer, which continued as an investment company. In 1959, Mr. Greenwald's entire interest in the trust was distributed to him. The Tax Court held that the trust was not exempt in 1959 and that the distribution received by Mr. Greenwald was therefore taxable as ordinary income. *Harold D. Greenwald,* 44 T.C. 137 (1965). The Court of Appeals agreed that the trust was not exempt in 1959, but it held that the portion of Mr. Greenwald's account standing to his credit in 1954 was taxable as a long-term capital gain on the theory that if it had been distributed to him at that

time, he would have been entitled to such treatment. The Court of Appeals said (366 F. 2d at 541) : "It would be harsh to treat taxpayer differently, merely because he stayed on with the same employer after the radical transformation of its business."

It is unnecessary for us to express any opinion regarding the decision by the Court of Appeals in *Greenwald*, for we find that our case is factually distinguishable. In our case, there was a change in the ownership of the corporation, a change in the business of the corporation, and a gradual reduction in the number of employees. However, these facts do not constitute the radical and drastic change that occurred in *Greenwald*. The petitioner testified that for business reasons the changeover was designed to take place only gradually. In 1959, there was a reduction of two employees; in 1960, nine employees; in 1961, six employees; and in 1962, one employee. The name of the corporation was not changed until 1960. The other Jacobowitz businesses did not move out until 1961.

To be entitled to the capital gains treatment, not only must there be a separation from service, but the distribution must be "on account of" the separation from service. In *E. N. Funkhouser*, 44 T.C. 178, 184 (1965), aff'd. 375 F. 2d 1 (C.A. 4, 1967), we said:

the statute requires that the distributions be made "on account of" such separation, and the record is utterly devoid of any evidence to establish that the distributions were made *by reason of,* or *because of,* or *as a result of,* or *as a consequence of,* or "on account of" such separation. The burden of proof was upon petitioner * * * [Emphasis in original.]

Even if we could find that the petitioner had separated from the service of his employer, he has failed to prove that the distribution which he received was on account of a separation from service. The evidence shows that two participants in the plan withdrew immediately after the sale of the business to the petitioner; two others withdrew in 1960, one because he wished to retire; and the two final participants did not receive their distributions until 1963 and 1964. There is no explanation of why these distributions were spread out in this manner. The petitioner has wholly failed to explain why the distribution to him was postponed until 1962. If he wishes us to believe that there was a contraction in the plan as a result of the change in the ownership and nature of the business, it would be necessary for him to explain why these distributions were spread out over 5 years and why his distribution did not occur until more than 4 years after he purchased the business. After considering all these circumstances, we find that the petitioner has failed to establish a sufficiently definite causal relationship between the changes in the business and the distribution to him in 1962.

Because of the gradual nature of the changes and the lack of causal relationship between them and the distributions, we find that this case is significantly different than *Greenwald*, that the petitioner has failed to prove that the distribution to him was on account of a substantial change in the makeup of the employees, and that the case is therefore controlled by such precedents as *United States* v. *Johnson*, *supra; United States* v. *Martin, supra; Harry K. Oliphint, supra*. Accordingly, the petitioner is not entitled to capital gains treatment with respect to the lump-sum distribution from the employees' trust.

In order to reflect the agreement of the parties as to other items in the notice of deficiency,

*Decision will be entered under Rule 50.*

[2] All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.