WILLIAM S. BOLDEN AND MARGARET K. BOLDEN, PETITIONERS,
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92107. Filed February 20, 1963.

*J. B. Fisher, Esq.*, for the petitioners.
*John J. Larkin, Esq.*, for the respondent.

BRUCE, *Judge:* The respondent determined a deficiency in income tax in the amount of $13,321.89 for the calendar year 1959. Two issues are presented for decision: (1) Whether an amount paid to a life insurance company pursuant to a certain contract constituted salary income to William S. Bolden, and (2) whether the fair market value of a pension trust policy received by him in 1959, less his basis therein, is taxable at ordinary income rates in the year received.

### FINDINGS OF FACT.

The petitioners, husband and wife, reside in Charleston, W. Va. They filed a joint Federal income tax return for the calendar year 1959 with the district director of internal revenue at Parkersburg, W. Va. Since the issues relate to transactions of William S. Bolden, he will be referred to as the petitioner.

The William S. Bolden Co., Inc., hereinafter referred to as Bolden Co., was a West Virginia corporation. The petitioner was its president and principal stockholder prior to March 1959.

Prior to 1959 Bolden Co. had in effect a tax-exempt pension trust plan for its employees, including the petitioner. The plan provided for contributions by the company and by its employees. The trustees of the plan purchased insurance policies for the benefit of covered employees. Aetna Life Insurance Co., hereinafter referred to as Aetna, had issued a policy, No. P959074, on the petitioner, pursuant to the plan.

The Banks-Miller Supply Co., hereinafter referred to as Banks-Miller, was a West Virginia corporation which, to a limited extent, was a competitor of Bolden Co. in certain areas of West Virginia.

In March 1959 petitioner and Banks-Miller entered into an agreement for the sale by the petitioner, as "seller," of all the issued and outstanding stock, 1,057 shares, of Bolden Co. to Banks-Miller, as "buyer," for the price of $225,000. A written agreement between these parties contained the following provisions, among others:

NOW, THEREFORE, in consideration of the premises, which are an integral part of this agreement and not mere recitals, SELLER and BUYER mutually covenant and agree with each other as follows:

1. That SELLER, shall sell to BUYER 1,057 shares of the common capital stock of COMPANY of the par value of $100.00 per share, at the purchase price of Two Hundred Twenty-five Thousand Dollars ($225,000.00), to be paid as hereinafter provided, and BUYER, in reliance on the representations and warranties of SELLER contained herein and subject to the terms and conditions of this agreement, shall purchase such shares from SELLER at such purchase price.

\* \* \* \* \* \* \*

5. That at the time of closing, SELLER shall deliver to BUYER, unless otherwise directed by it, the written resignation of COMPANY'S directors and officers, and shall take or cause to be taken such action as BUYER may request with respect to changes in directors and officers.

\* \* \* \* \* \* \*

9. That SELLER agrees that from and after the closing he will not, unless acting as an officer or employee of COMPANY, or with the BUYER'S written consent, directly or indirectly own, manage, operate, join, control or participate in or be connected with, as officer, employee, partner or otherwise, any business under any name similar to COMPANY'S name, and that for a period of five (5) years after the closing he will not in any such manner, directly or indirectly, compete or become interested in any competitor of COMPANY in the trade area in which COMPANY may be doing business during said 5-year period. SELLER acknowledges that the remedy at law for any breach of the foregoing will be inadequate and that COMPANY and BUYER shall be entitled to injunctive relief to enforce the provisions hereof.

As a part of the transaction, Banks-Miller entered into a letter agreement with the petitioner, accepted by him on March 16, 1959, reciting:

In the event that Banks-Miller Supply Company, a corporation, purchases all the issued and outstanding common capital stock of Wm. S. Bolden Co., Inc., which consists of 1,057 shares, pursuant to an agreement of even date herewith between William S. Bolden, therein designated as "Seller", and Banks-Miller Supply Company, therein designated as "Buyer", reference to which agreement is hereby made, Banks-Miller Supply Company will cause such action to be taken as may be appropriate and necessary to cause Wm. S. Bolden Co., Inc. to enter into this agreement with you, and therefore Banks-Miller Supply Company and William S. Bolden do hereby mutually agree with each other as follows:

1. That the amount necessary to prepay, with a lump sum payment, the remaining premiums on Policy No. P959074, issued to you by Aetna Life Insurance Company pursuant to the pension trust plan established for employees by Wm. S. Bolden Co., Inc., is $7,771.41, and Wm. S. Bolden Co., Inc. will make a lump sum payment of $4,800.00 toward the prepayment of all future premiums due on this policy.

2. That William S. Bolden will, simultaneously with the lump sum payment of $4,800.00 to be made by Wm. S. Bolden Co., Inc., make a lump sum payment of $2,971.41 to Aetna Life Insurance Company, so that the premiums on Policy No. 959074 aforesaid will be paid in full.

3. That Wm. S. Bolden Co., Inc., and William S. Bolden will both request Aetna Life Insurance Company to refund any unearned annual premiums, in the event of the death of William S. Bolden prior to his normal retirement date under the policy, which is March 1, 1963, to Wm. S. Bolden Co., Inc. and to William S. Bolden in proportion to the premium which is being paid by each pursuant to the terms of this agreement, and in the event Aetna Life Insurance Company refuses to comply with such request, Wm. S. Bolden Co., Inc. and William S. Bolden shall make an adjustment of any unearned annual premiums which are refunded by Aetna Life Insurance Company in proportion to the payment of premiums which is hereby agreed to be made by each.

4. That William S. Bolden, in consideration of the premium payment in the amount of $4,800.00 which Wm. S. Bolden Co., Inc. has hereby agreed to make to Aetna Life Insurance Company, does hereby agree to stay in the employ of Wm. S. Bolden Co., Inc. in an advisory and consulting capacity until March 1, 1963, and to devote more than twenty hours a week and more than five months in each calendar year in rendering services in such capacity to Wm. S. Bolden Co., Inc., and Wm. S. Bolden Co., Inc. does hereby agree to employ William S. Bolden in such capacity for the consideration aforesaid.

5. That all the terms and provisions of this letter agreement shall inure to the benefit of and be binding upon the successors and assigns of Wm. S. Bolden Co., Inc., and the personal representatives, next-of-kin, distributees, heirs and devisees of William S. Bolden, respectively.

The petitioner paid to Bolden Co. $2,971.41 pursuant to this agreement, and Bolden Co. paid Aetna $7,771.29, which made the policy paid up. Bolden Co. charged to salary account the net amount of $4,799.88, which it paid under the letter agreement.

The Aetna insurance policy, No. P959074, was delivered to the petitioner in 1959. It had a cash surrender value of $14,599.87 as of February 29, 1960.

Following the sale of the Bolden Co. stock, the petitioner accepted new employment as manager of the Charleston Civic Center. The only actual service he performed for Bolden Co. after March 1959 was to answer certain questions about customers of that company.

The petitioner was not separated from the service of Bolden Co. in 1959. The payment of $4,799.88 made by Bolden Co. to Aetna in 1959 was salary income to the petitioner. The fair market value of the insurance policy, less the petitioner's basis therein, was ordinary income to the petitioner in 1959.

OPINION.

The respondent determined that $4,799.88 paid by Bolden Co. to Aetna to apply on advance premiums on the policy which petitioner acquired through the pension trust plan represented additional compensation to the petitioner for services performed for Bolden Co., and further, that the cash surrender value of the policy, less peti-

tioner's basis (amounting to $3,855.60) in it, was taxable as ordinary income when the policy was distributed to the petitioner in 1959.

The petitioner contends that the amount paid by Bolden Co. to Aetna was not compensation since he had severed his connection as an employee of the company, that the only service he performed thereafter was to answer a few questions about customers, and that this was all he agreed to do.

The petitioner also contends that the value of the insurance policy, over his basis in it, is to be treated as long-term capital gain, pursuant to section 402(a)(2) of the Internal Revenue Code of 1954.[1] This section provides for capital gains treatment for certain pension trust distributions, if made by reason of the employee's death or "other separation from the service." The application of this provision thus turns on the question whether the petitioner was separated from the service of Bolden Co.

As a part of the transaction involving the sale of the Bolden Co. stock, the petitioner and Banks-Miller entered into a letter agreement concerning the policy and services to be performed by the petitioner. Such agreement includes the following provision:

4. *That William S. Bolden, in consideration of the premium payment in the amount of $4,800.00* which Wm. S. Bolden Co., Inc. has hereby agreed to make to Aetna Life Insurance Company, *does hereby agree to stay in the employ of Wm. S. Bolden Co., Inc. in an advisory and consulting capacity until March 1, 1963,* and to devote more than twenty hours a week and more than five months in each calendar year in rendering services in such capacity to Wm. S. Bolden Co., Inc., *and Wm. S. Bolden Co., Inc. does hereby agree to employ William S. Bolden in such capacity for the consideration aforesaid.* [Emphasis supplied.]

There is no indication that this agreement was abrogated. The mere fact that the company did not demand the hours of service contracted for or call upon him more often for advice does not prove that the petitioner was not employed by Bolden Co. nor does it deprive the payment of its compensatory nature. It was similar to a retainer fee. The new owners of Bolden Co. treated the payment for accounting purposes as salary paid by Bolden Co. to the petitioner, and in view of the terms of the agreement this treatment was warranted. We find

---

[1] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

\* \* \* \* \* \* \*

(2) CAPITAL GAINS TREATMENT FOR CERTAIN DISTRIBUTIONS.—In the case of an employees' trust described in section 401(a), which is exempt from tax under section 501(a), if the total distributions payable with respect to any employee are paid to the distributee within 1 taxable year of the distributee on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service, the amount of such distribution, to the extent exceeding the amounts contributed by the employee (determined by applying section 72(f)), which employee contributions shall be reduced by any amounts theretofore distributed to him which were not includible in gross income, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. \* \* \*

from the evidence that the petitioner was not separated from the service of Bolden Co. in 1959, and that the payment to Aetna was compensation for services. It follows that the net value of the insurance policy was not subject to capital gains treatment under section 402(a)(2). See *Estate of Frank B. Fry*, 19 T.C. 461 (1952), affd. 205 F. 2d 517 (C.A. 3, 1953); *Estate of Edward I. Rieben*, 32 T.C. 1205 (1959); and *Harry K. Oliphint*, 24 T.C. 744 (1955), affd. 234 F. 2d 699 (C.A. 5, 1956). The case of *Mary Miller*, 22 T.C. 293 (1954), affd. 226 F. 2d 618 (C.A. 6, 1955), cited by the petitioner, is distinguishable on the facts. There the petitioners became employed by a new corporation through a reorganization. Here the petitioner's agreement was to continue in the employ of the same employer, Bolden Co.

*Decision will be entered for the respondent.*

