**Harry P. RIDENOUR, Jr. and Carolyn A. Ridenour,**

v.

**The UNITED STATES.**

No. 613–81 T.

United States Claims Court.

July 26, 1983.

Mac Asbill, Jr., Washington, D.C., for plaintiff; Joseph F. McKeever, III, Washington, D.C., of counsel.

Betty N. Ferber, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

OPINION

ON CROSS–MOTIONS FOR
SUMMARY JUDGMENT

SETO, Judge:

The case at bar involves a claim for a tax refund and is before this court on cross-mo-

tions for summary judgment. This court determines that summary judgment is appropriate since there are no disputed issues of material fact. *See Fed.R.Civ.P.* 56.

This is a case of first impression and presents the issue of whether a taxpayer's promotion from the status of common-law employee to partner constitutes a "separation from the service" of his employer pursuant to 26 U.S.C. § 402(e)(4)(A) of the Internal Revenue Code (hereinafter "the Code").

Plaintiff [1] contends that the distribution to him of his vested benefits under his employer's retirement plan (triggered by his promotion to partner) was a result of his "separation from the service." 26 U.S.C. § 402(e)(4)(A) (1976). The phrase "separation from the service" has been the subject of substantial debate, primarily due to the lack of evidence of Congressional intent. *Osterman v. Commissioner,* 50 T.C. 970, 972 (1968). While the issue involved in the case at bar has been addressed by a revenue ruling,[2] it has not received judicial consideration. The validity of plaintiff's contention will determine whether the lump-sum distribution to him is entitled to preferential tax treatment, or not.[3]

## FACTS

This is an action to recover federal income tax in the amount of $3,567 paid for the calendar year 1977, plus statutory interest thereon.

Arthur Andersen & Co. is an Illinois partnership engaged in the practice of public accounting and related professional services. In 1957, Arthur Andersen & Co. established, and has since maintained, The Arthur Andersen & Co. Employees' Profit Sharing Plan (hereinafter "the Profit Shar-

ing Plan") for its eligible employees. The Profit Sharing Plan is a written program established and maintained by Arthur Andersen & Co. to enable its employees or their beneficiaries to participate in its profits. The Profit Sharing Plan is a qualified plan within the scope of section 401(a) of the Code. The Arthur Andersen & Co. Employees' Profit Sharing Trust (hereinafter "the Employees' Trust") is part of the Profit Sharing Plan and is exempt from tax under section 501 of the Code.

The Profit Sharing Plan provideš that participants who become partners in Arthur Andersen & Co. are no longer eligible to participate in that plan. The Profit Sharing Plan further requires that new partners be paid all amounts credited and vested to their accounts within 60 days after the end of the taxable year in which they became partners.

Plaintiff was a common-law employee of Arthur Andersen & Co.'s Washington, D.C. office from October 18, 1956 through August 31, 1977. From January 1, 1969 through August 31, 1977, plaintiff was a participant in the Profit Sharing Plan by virtue of his status as an employee of Arthur Andersen & Co. On September 1, 1977, plaintiff became a partner of Arthur Andersen & Co. and thus, was no longer eligible to participate in the Plan. On August 18, 1977, the Employees' Trust distributed $13,605 to plaintiff, his entire account balance in the Profit Sharing Plan.

Of the $13,605 distributed to plaintiff, $7,849 represented the amount attributable to his participation in the Profit Sharing Plan through December 31, 1973, and $5,756 represented the amount attributable to his participation in the Plan after December 31,

---

1. Carolyn A. Ridenour is a party solely because she and her husband filed a joint federal income tax return for 1977. Hereinafter all references to plaintiff shall be only to Mr. Ridenour.

2. Rev.Rul. 81–26, 1981–1 C.B. 200 (superseding Rev.Rul. 73–414, 1973–2 C.B. 144). This ruling held that *a promotion from the status of common-law employee to a partner did not* constitute a "separation from the service" within the meaning of 26 U.S.C. § 402(e)(4)(A).

3. The Employment Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93–406, 88 Stat. 829, provides that the portion of a distribution representing pre-1974 value, receives capital-gains treatment. The balance of the distribution, whether to a self-employed person or to a common-law employee, is taxed as ordinary income, subject to 10-year averaging.

1973. No portion of the distribution received by plaintiff was "rolled over" to an eligible retirement plan within the meaning of section 402(a)(5) of the Code. Plaintiff received no other lump-sum distribution in 1977 and never received a lump-sum distribution in any other year.

Plaintiff timely filed a joint federal income tax return for 1977. He treated the amount of the distribution from the Employees' Trust as ordinary income.

On April 13, 1981, plaintiff timely filed a claim° for refund of income taxes paid for 1977, asserting as the sole basis for such claim that the distribution to plaintiff from the Employees' Trust was made upon his "separation from the service." After the passage of six months, the Internal Revenue Service had neither granted nor denied plaintiff's claim for refund and plaintiff timely filed the petition in this case.

## DISCUSSION

In order to ensure that retirees and their families have adequate income, Congress has, since 1942, provided significant tax benefits to encourage the development of private retirement plans, including profit-sharing plans. *H.R.Rep. No. 77–2333, 77th Cong., 2d Sess. 50 (1942); S.Rep. No. 93–383, 94th Cong., 2d Sess. 2, reprinted in [1974] U.S.Code Cong. & Ad.News, 4639, 4890, 4891; See 4A Mertens, The Law of Federal Income Taxation § 25B.02 (1979).* Contributions by an employer to a qualified plan constitute deductible business expenses. 26 U.S.C. § 404(a). The income from the funds in a retirement plan are not subject to tax during the period in which they accumulate. 26 U.S.C. § 501(c)(18)

(1976). Generally, distributions to an employee receive ordinary income treatment.

In the 1942 Revenue Act, Pub.L. No. 77–753, 56 Stat. 798, Congress sought to mitigate the heavy tax burden which results if an employee receives a single distribution of his entire vested benefits pursuant to a retirement plan. *H.R.Rep. No. 91–413, 91st Cong., 1st Sess. 154, U.S.Code Cong. & Admin.News 1969, p. 1645, reprinted in 1942–2 C.B. 607.* Congress provided preferential tax treatment for distributions of an employee's entire interest in a trust "on account of death or other separation from the service" received within the span of one taxable year. The principle of alleviating the tax burden imposed by lump-sum distributions, or distributions which include the entire "balance to the credit of an employee" as provided by section 402(e)(4)(A), has not changed, although, the precise method has been somewhat modified.[4]

Congress did not, however, extend favorable treatment to all distributions of an employee's vested benefits. Instead, section 402(e)(4)(A) refers only to distributions which are "on account of" four specific circumstances: (1) death, (2) disability of the employee, (3) attaining the age of 59½, and (4) "separation from the service". Favorable tax treatment, including deductions, exemptions, as well as capital-gains treatment of lump-sum distributions under section 402(e), "are matters of legislative grace and do not turn upon general equitable considerations." *United States v. Martin,* 337 F.2d 171, 175 (8th Cir.1964) (citing *Interstate Transit Lines v. Commissioner,* 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607 (1943)). Consequently, preferen-

---

**4.** The portion of a distribution attributed to the employee's contribution, which represents after-tax income, has never been taxed. The 1942 Act provided that the portion of a distribution in excess of the employee's contribution, should receive long-term capital gains treatment. The 1954 Code made no change in this treatment. The Self-Employed Individual's Tax Retirement Act of 1962, Pub.L. No. 87–792, 76 Stat. 809, permitted the self-employed to participate in qualifying plans, and allowed them to use a special 5-year averaging device for the portion of a lump-sum distribution attributable

to employer contributions. The Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487, provided that the portion of a lump-sum distribution attributable to employer contributions and credited after 1969 to a common-law employee, would be treated as ordinary income subject to seven-year forward averaging. The amount of the distribution which represented the allocable share of the plan's earnings, as well as benefits credited prior to 1969, continued to receive *capital-gains* treatment. ERISA continued preferential tax treatment for such distributions. *See* footnote 2, *supra.*

tial treatment should be limited only to distributions which occur in the circumstances enumerated in section 402(e)(4)(A), despite the fact that a heavier tax burden is likely to result to others. *See United States v. Johnson,* 331 F.2d 943, 953 (5th Cir.1964); *United States v. Martin,* 337 F.2d 171, 175 (8th Cir.1964). "The Congressional history," the Seventh Circuit has observed, "supports application of this precise exemption solely to situations falling within the exception exactly as stated." *Gunnison v. Commissioner,* 461 F.2d 496, 499 (7th Cir. 1972) (citing *H.R.Rep. No.* 83–1337, 83d Cong., 2d Sess., *reprinted in* [1954] *U.S.Code Cong. & Ad.News* 4017, 4068, 4285–86). Moreover, the taxpayer bears the burden of demonstrating that the Code entitles him to preferential tax treatment of a lump-sum distribution under section 402(e). *United States v. Martin,* 337 F.2d 171, 175 (8th Cir.1964).

██ In determining a plaintiff's entitlement to relief, this court must bear in mind its limited jurisdiction. Since all claims brought in this court are against the United States, and therefore involve a waiver of sovereign immunity, *Porter v. United States,* 204 Ct.Cl. 355, 359, 496 F.2d 583 (1974); *National State Bank of Newark v. United States,* 174 Ct.Cl. 872, 876, 357 F.2d 704 (1966), this court must exercise not only the traditional reluctance of federal courts to act absent specific statutory authorization, *Cary v. Curtis,* 44 U.S. (3 How.) 236, 245, 11 L.Ed. 576 (1845); *Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 93, 2 L.Ed. 554 (1807), but must exercise an additional measure of restraint growing from the principle that waivers of sovereign immunity must be narrowly construed. *See United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969), *United States v. Sherwood,* 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941).

Plaintiff's argument that promotion to partner constitutes a "separation from the service" is based upon inferences drawn from the common-law meaning of "service" and the distinctions between regular employees and the self-employed. The term "service" ordinarily refers to the tasks which an employee performs for his employer. *See, e.g., De Martinez v. Gardner,* 291 F.Supp. 132, 136 (D.P.R.1968) (construing 205(g) of the Social Security Act, 42 U.S.C. 405(G)); *Faul v. Commissioner,* 263 F.2d 645, 649 (9th Cir.1959) (construing 26 U.S.C. § 107(a) (repealed)); *H.J. Bernard Realty Co. v. Director of Employment Security,* 104 R.I. 651, 248 A.2d 245, 247 (1968) (construing State Employment Security Act, Gen.Laws 1956 § 28–42–3). A common-law employment relationship exists when the person to whom services are provided has direct control of the person who renders the services. *Roy Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947); Rev.Rul. 68–303, 1968–1 C.B. 165.

By contrast, partners, "join together for the purpose of carrying on a trade, profession, or business." *Commissioner v. Tower,* 327 U.S. 280, 286, 66 S.Ct. 532, 535, 90 L.Ed. 670 (1946). *See also* Unif. Partnership Act § 7.8, 6 U.L.A. 22, 38–39. Partners share a "community of interest in the profits and losses" and participate in the management and control of the partnership. *Tower,* 327 U.S. at 286, 66 S.Ct. at 535, and therefore cannot be considered common-law employees. Rev.Rul. 69–183, 1969–1 C.B. 255. Plaintiff notes that his promotion significantly increased his responsibilities and authority, and entitled him to a share of the partnership's earnings in lieu of a salary. In view of the important distinctions between common-law employees and the self-employed, plaintiff asserts that the phrase "separation from the service" should be construed as meaning the termination of the common-law employment relationship, such as when an employee is promoted to partner. However, the impact which the common-law meaning of "service" would have on the underlying objectives of section 402 and federal pension legislation in general, must also be considered. Common-law distinctions should not govern statutory interpretations if they would frustrate the objectives which pension legislation is designed to serve. *See Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26

L.Ed.2d 339 (1970); *NLRB v. Hearst Publications,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); *United States v. Silk,* 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). Statutory terms "must be read in light of the mischief to be corrected and the end to be attained." *NLRB v. Hearst Publications,* 322 U.S. 111, 124, 64 S.Ct. 851, 857, 88 L.Ed. 1170 (1944); *South Chicago Coal & Dock Co. v. Deputy Commissioner,* 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1939). Therefore, in considering whether the term "service", as used in section 402(e), refers only to the common-law employment relationship, this court must heed the principle espoused by the United States Supreme Court that "statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982).

### 1. *Pre-1962 Developments*

The legislative history regarding the phrase "separation from the service" also supports the proposition that a person who continues to provide services is not entitled to the preferential tax treatment usually accorded to one who discontinues providing services. The legislative history and the express language of pre-ERISA revenue acts provide specific examples of circumstances in which a plan participant "separates from the service." These examples are similar insofar as each refers to events in which the participant ceases to provide services. Congress has stated that a separation from service occurs when an employee "retires or severs his connection with his employer ... or ... dies." *S.Rep. No.* 77–1631, 77th Cong., 2d Sess. 138 (1942), *reprinted in* 1942–2 C.B. 504, 607 (1942). Moreover, until the enactment of The Employment Retirement Income Security Act of 1974 (ERISA),[5] the 1954 Code referred to a lump-sum distribution as a distribution "on account of the employee's death or other separation from the service." 26 U.S.C. § 402(a)(2) (repealed). These examples of "separation" constitute guidelines regard-

ing the scope of this term and have been relied upon in interpreting section 402(e) in other contexts. *United States v. Johnson,* 331 F.2d 943, 952 (5th Cir.1964); *Nelson v. United States,* 222 F.Supp. 712 (N.D.Idaho 1963).

The use of specific examples of separations as provided by predecessors of section 402(e) and legislative history is consistent with the doctrine of *ejusdem generis,* which provides that general words which follow specific words in a statutory provision must be construed as referring only to events similar in nature to those contemplated by the specific words. *Cleveland v. United States,* 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946); 4A *Sutherland Statutory Construction* § 47.17 (4th ed. 1974). This doctrine has been applied in construing the Internal Revenue Code. *Lyman v. Commissioner,* 83 F.2d 811 (1st Cir.1936). The fact that each of the examples offered requires a plan participant to cease providing services suggests, *a fortiori,* that a distribution incident to a participant's promotion to partner should *not* be entitled to preferential tax treatment.

Moreover, Congress' clarification of the meaning of section 402 in the context of corporate reorganizations and changes in ownership, also suggests that technical changes in the relationship between a person and an employer do not constitute a true "separation from the service" so long as that person continues to provide services. We are cognizant that the 1954 House draft of section 402 sought to expand the scope of the term "separation from the service" to include distributions pursuant to corporate liquidations. However, the Senate effectively eliminated this provision because of its concern that a corporation might periodically engage in reorganizations unaccompanied by "a substantial change in the makeup of employees" merely to secure favorable tax treatment of lump-sum distributions. In order not to penalize those taxpayers who had misinterpreted the 1939 Code regarding the tax treatment of lump-sum distributions in reorganizations, the

---

**5.** *See* footnote 2, *supra.*

Senate provided that preferential tax treatment should be accorded to distributions which occurred in 1954 incident to a liquidation in a prior year. These changes were incorporated in section 402 of the 1954 Code, which provided:

> [D]istributions made after December 31, 1953, and before January 1, 1955, as a result of the complete termination of a stock bonus, pension, or profit-sharing plan of an employer which is a corporation, if the termination of the plan is incident to the complete liquidation, occurring before the date of enactment of this title, of the corporation, whether or not such liquidation is incident to a reorganization as defined in section 368(a), shall be considered to be distributions on account of separation from service.

The prevailing interpretation of this legislative history, developed by the Fifth Circuit in *United States v. Johnson,* 331 F.2d 943 (5th Cir.1964), and subsequently adopted by the Tax Court in *Gittens v. Commissioner,* 49 T.C. 419 (1968), is that *only* a reorganization which results in a substantial change in the makeup of employees qualified as a "separation." *See United States v. Martin,* 337 F.2d 171 (8th Cir. 1964); *McGowan v. United States,* 277 F.2d 613 (7th Cir.1960); Hossenthaler and Lohwater, *Lump-Sum Distributions: Determining When "Separation From Service" Occurs,* 10 Tax'n for Law. 272, 274 (1982). "[T]he legislative history makes it plain," the Fifth Circuit noted in *Johnson,* "that a corporate liquidation or reorganization which brings about a change in employment relationship in no more than a formal or technical sense, and which does not involve a *substantial change in the makeup of employees,* is not enough to constitute a 'separation from the service'." *United States v. Johnson,* 331 F.2d 943, 949 (5th Cir.1964) (Quoting Rev.Rul. 58–94, 58–1 C.B. 196) [Emphasis original]. Therefore, a change in beneficial ownership of a corporation by itself does not cause a "separation." *United States v. Johnson,* 331 F.2d 943, 949 (5th

Cir.1964); *McGowan v. United States,* 277 F.2d 613 (7th Cir.1960); *United States v. Martin,* 337 F.2d 171 (8th Cir.1964); *Bolden v. Commissioner,* 39 T.C. 829 (1963). Moreover, a change in the identity of the corporate employer, *per se,* does not constitute a "separation from the service." For example, the liquidation of a corporate employer does not cause a "separation" if the employee continues to work for the corporation to which the employer's assets were sold. *United States v. Haggart,* 410 F.2d 449 (8th Cir.1969); *Gegax v. Commissioner,* 73 T.C. 329 (1979). Similarly, there is no "separation" in circumstances in which the employer corporation merges into its parent corporation, and the employees continue in their same positions in the parent corporation. *Clarke v. Commissioner,* 54 T.C. 1679 (1970). Thus, the pre-1962 legislative history supports the proposition that a person who continues to provide services, despite changes in the employment relationship, has not "separated from the service." Since plaintiff continues to provide services to Arthur Andersen & Co., legislative history suggests that he is not entitled to preferential tax treatment of the distribution he received.

### 2. *The 1962 Internal Revenue Act*

The legislative history of the Self-Employed Individual Tax Retirement Act, Pub.L. No. 87–792, 76 Stat. 809 (hereinafter the "1962 Act"), also indicates that the change in status from common-law employee to partner does not constitute a "separation from the service." Since 1942, the Code's retirement plan provisions have required plans to be "for the exclusive benefit of employees." The term "employees" originally referred only to common-law employees. *H.Rep. No.* 992, 87th Cong., 1st Sess. 29, *reprinted in* [1962] *U.S.Code Cong. & Ad.News* 2964, 2992. In 1962, Congress enacted the Self-Employed Individual's Tax Retirement Act, Pub.L. No. 87–792, 76 Stat. 809 (1962), which provided that the self-employed, including partners, could also participate in qualifying plans.[6] The 1962 Act

---

**6.** The 1962 Act imposed important requirements on plans in which the self-employed par-

ticipated to ensure that the plans were not manipulated in a manner detrimental to the

distinguished the tax treatment of common-law employees from the self-employed, by not allowing the latter to receive preferential tax treatment of distributions as a result of a "separation from the service." In lieu of "separation from the service," the 1962 Act substituted reaching the age of 59½. Exclusion of "separation from the service" as a condition for preferential treatment of distributions to the self-employed was warranted, since "there ... (was) no comparable concept of 'separation from service' for the self-employed." *H.R. Conf.Rep. No.* 93–1280, 93d Cong., 2d Sess. 349, *reprinted in* [1974] *U.S.Code Cong. & Ad.News* 4639, 5038, 5128. The Report of the House Ways and Means Committee on ERISA stated that, due to the basic differences in the status of common-law employees and the self-employed, it was necessary to retain this discrepancy in the tax treatment. *H.R.Rep. No.* 93–807, 93d Cong., 2 2d Sess. 150, *reprinted in* [1974] *U.S.Code Cong. & Ad.News,* 4670, 4815. Plaintiffs cite this statement to support their contention that an event, such as a promotion to partner, which as a side effect, terminates the common-law employee relationship, constitutes a "separation" within the meaning of section 402(e). Plaintiff's rationalization is, at best, inchoate, attenuated, and ostensibly *ipse dixit.*

A promotion to partner is fundamentally different from a termination; the former still involves continued service to the partnership, while the latter does not. Moreover, treating a promotion to partner as a "separation from service" would substantially encourage early distributions. This clearly was not the Congressional intent, since such an interpretation is inconsistent with the policy considerations underlying the related "age 59½ provision." *See Addison v. Commissioner,* 38 T.C.M. (CCH) 1226 (1979).

Statutory interpretations of the Code's retirement plan also support the conclusion that a change in the common-law status of an employee is insignificant in determining eligibility to participate in a plan. IRS regulations concerning the manner in which the period of service can be calculated, ignore common-law distinctions.[7]

The principle underlying the "separation from service" regulation has also been applied in other contexts. For example, the service rendered by partners in a partnership which dissolves and re-emerges as a corporation can be considered to determine whether they are eligible to participate in the corporate retirement plan. *Farley Funeral Home v. Commissioner,* 62 T.C. 150 (1974). Furthermore, service for a predecessor employer must be credited, for purposes of section 401, regardless of the common-law status in which the services were rendered or of any change in status which might have occurred. 26 U.S.C. § 414(a);

interests of common-law employees. Inasmuch as plans covering the self-employed "will ordinarily be much smaller in scope than most of the corporate plans already in existence," the Senate Report to the 1962 Act noted, "they would, if present rules were not supplemented, offer somewhat greater opportunities for abuse than do corporate plans covering many employees." *S.Rep. No.* 87–992, 87th Cong., 2d Sess. 3, *reprinted in* [1962] *U.S.Code Cong. & Ad.News* 2964, 2966. Both the coverage of a plan and the contributions or the benefits provided pursuant to it cannot discriminate in favor of highly compensated employees, including the self-employed. 26 U.S.C. § 401(a)(4)(C) (1976), Treas.Reg. 1.401–11(d)(1) (1983). Additional restrictions are placed on plans covering "owner-employees," who either own the entire interest in an unincorporated trade or business, or are partners owning more than 10 percent of either the capital or profit interests in the partnership. 26 U.S.C. § 401(c)(3); Treas.Reg. 1.401–12 (1983). For example, plans covering owner-employees must provide that the benefits are completely vested or nonforfeitable. 26 U.S.C. § 401(d)(2).

7. For example, Treas.Reg. 1.401–10(b)(4) provides:

For the purpose of determining whether an employee within the meaning of section 401(c)(1) satisfies the requirements for eligibility under a qualified plan established by an employer, such an employer may take into account past services rendered by such an employee both as a self-employed individual and as a common-law employee if past services rendered by other employees, including common-law employees, are similarly taken into account.

Let.Rul. 7742003 (1977), *reprinted in* Pens. Plan Guide (CCH) § 17.365M.

3. *Distributions to Partners and Employees*

The similarity in the tax treatment of lump-sum distributions to partners and common-law employees also suggests that a mere change in the common-law status of an individual is not a significant event in the statutory scheme. The 1962 Act provided tax relief to the self-employed who received lump-sum distributions by allowing them to use 5-year averaging. Subsequent to the enactment of the 1962 Act, Congress attempted "to eliminate to the extent feasible, the distinctions between taxation of lump-sum distributions to regular employees and to the self-employed." *H.R.Conf. Rep. No.* 93–1280, 93d Cong., 2d Sess. 349, *reprinted in* [1974] *U.S.Code Cong. & Adm. News* 5038, 5128.

In view of the minimal impact which a promotion to partner can have on the vested rights of a plan participant, particularly compared to the other events enumerated in section 402(e), it would be anomalous to treat it as an event that should trigger preferential tax treatment of distributions. A participant's share of a plan's funds must be based on a "definite predetermined formula," which invariably focuses on compensation and years of service. Employee earnings represent "the most important single factor" used to determine the allocation of employer contributions under qualifying profit-sharing plans. 1976 Pens. and Profit Sharing (P–H) § 6589; Treas.Reg. 1.4011(b)(1)(ii) (1982). The Code encourages use of formulas which rely on both factors. 26 U.S.C. § 401(a)(5) (1976). The profit-sharing plan established by Arthur Andersen provides for an annual allocation based upon the ratio of each employee's units of participation to the total units of participation of all employees.[8]

The fact that the particular distribution in the case at bar, occurred because the profit-sharing plan excluded partners, an exclusion not necessitated by the Code, supports the contention that a promotion to partner should not constitute a "separation from the service." Arthur Andersen chose to limit its profit-sharing plan to nonpartners.[9] In order to ensure that retirement plans were not manipulated to provide early lump-sum distributions, the Code precludes preferential tax treatments to distributions resulting from an employer's decision to limit the scope of the plan. For example, a distribution pursuant to the termination of a plan does not warrant preferential tax treatment.[10] *S.Rep. No.* 83–1622, 83d Cong., 2d Sess. 54, *reprinted in* [1954] *U.S. Code Cong. & Adm.News,* 4621, 4685. This provision was adopted to discourage high income employers from terminating plans solely to receive preferential tax treatment and has been applied to plan terminations regardless of the underlying motives. *Jenneman v. Commissioner,* 67 T.C. 906, 910 (1977).

The lump-sum distribution to new partners pursuant to the Arthur Andersen Profit Sharing Plan is similar to early lump-sum distributions from terminated plans. Both lump-sum distributions are made while participants are still performing services and result from employer decisions to limit the plans. If this court permitted plaintiff to receive preferential tax treatment, it

---

8. Under this plan:
"[U]nits of participation" shall be computed for each such member by allowing one unit for *each year of the member's credited service* as of the last day of the preceding year plus one unit for each $100 of compensation paid to such member in the current plan year (excluding for this purpose any compensation paid to an employee prior to the date on which such an employee became a member in the plan). [Profit Sharing Plan, § 4.2 ("Allocation of Firm's Contribution")] [Emphasis supplied].

9. Profit Sharing Plan, § 1.6 ("Eligible Employees").

10. In order for a plan to qualify for favorable tax treatment, an employer must establish it with the intent to maintain it permanently. Treas.Reg. 1.401–1(b)(2). Although the employer has the authority to modify or terminate the plan, a plan will be disqualified if it is terminated in circumstances which suggest that it was established solely to serve as a subterfuge to assist high income employees.

would, in effect, allow the creation of tax benefits which would circumvent Congressional intent.

### 4. *Policy Considerations*

Providing preferential tax treatment for distributions on account of a promotion to partner is also inconsistent with Congressional policy. The 1962 Act was designed to "encourage the establishment of voluntary retirement plans by self-employed persons." *S.Rep. No.* 87–992, 87th Cong., 1st Sess. 1, *reprinted in* [1962] *U.S.Code Cong. & Ad. News* 2964. However, providing preferential treatment for distributions on account of a promotion of an employee to the status of a "self-employed" partner, would constitute a substantial incentive for premature termination of the retirement plan. It would create a device by which employees, who subsequently become partners, could receive their vested benefits on terms more favorable than do employees whose status does not change. The policy considerations articulated by Congress, which underlie the practice of providing preferential tax treatment to lump-sum distributions, do not apply to situations in which a person continues to render services. In this regard, promotion from the status of a common-law employee to a partner can be distinguished from retirement, death, disability, and resignation.

On the other hand, providing preferential tax treatment to distributions of an employee's entire vested benefits in circumstances in which he ceases to provide services, is consistent with the Congressional policies underlying tax treatment of lump-sum distributions. Preferential tax treatment when an employee dies, 26 U.S.C. § 402(e)(4)(A)(i), or becomes disabled, 26 U.S.C. § 402(e)(4)(A)(iv), has been justified as necessary in view of the burdens which these events usually impose on a family's finances. *See Cong.Rec.* 17746 (7 Sept. 1962) (Legislative history colloquy, 1962 Act). However, the mere change in the common-law status of an employee, who of course, continues to be employed, does not involve these types of exigencies.

Similarly, the justification for providing preferential tax treatment to retirees is inapplicable to the circumstances involved in the case at bar. The primary objective of mitigating the tax impact of lump-sum distributions is to ensure that retirees have adequate income. *H.R.Rep. No.* 93–807, 93d Cong., 2d Sess. 150, *reprinted in* [1974] *U.S.Code Cong. & Ad.News* 4670, 4815. Since the concept of "separation from the service," which encompasses retirement, does not apply to the self-employed, the 1962 Act provided that attainment of the age of 59½ triggers preferential tax treatment of a distribution in order to provide retirement security for the self-employed. *H.R.Rep. No.* 93–807, 93d Cong., 2d Sess. 150, *reprinted in* [1974] *U.S.Code Cong. & Ad.News* 4670, 4815. It was extended to common-law employees by ERISA solely to harmonize the tax treatment of distributions to common-law employees and the self-employed. *H.R.Conf.Rep. No.* 93–1280, 93d Cong., 2d Sess. 349, *reprinted in* [1974] *U.S.Code Cong. & Ad.News* 4815, 5128.

Treatment of an employee's resignation as a "separation from the service" is also based on considerations unrelated to the case at bar. Employees, who do not receive lump-sum distributions upon *changing* jobs, risk losing many of their vested benefits. Due to the highly mobile nature of the U.S. labor market, a change in employment is common, and the likelihood of an employee acquiring vested rights in several plans is great. *H.R.Rep. No.* 93–807, 93d Cong., 2d Sess. 158, *reprinted in* [1974] *U.S.Code Cong. & Ad.News* 4670, 4823. If distribution payments are only scheduled to commence a substantial period after resignation, it is possible that the employer might be unable to locate the plan participant, or that the participant might not remember to claim his benefits. *Pub.L. No.* 93–406, § 202, 26 U.S.C. § 411 (1976). Such compelling reasons for allowing favorable tax treatment of lump-sum distributions do not exist for partnership promotions.

In order to ensure that plan participants receive their vested benefits, ERISA encourages lump-sum distributions as a means to facilitate the mobility of employees and

their retirement funds as they change jobs. *H.R.Conf.Rep. No.* 93–1280, 93d Cong., 2d Sess. 341, *reprinted in* [1974] *U.S.Code Cong. & Ad.News* 5038, 5121. For example, ERISA provides that lump-sum distributions can be "rolled over" into individual retirements accounts, tax free. 26 U.S.C. § 408 (1976). Providing preferential treatment to distributions incident to resignations is consistent with the Congressional concern to encourage mobility, insofar as it reduces the tax impact of a lump-sum distribution. This policy is *not* applicable to the promotion of an employee to partner, since he remains with the same business.

Thus, the underlying policy considerations supporting preferential tax treatment for distributions upon death, disability, or resignation are inapplicable to those persons who continue to provide services to the same business.

5. *Administrative Interpretations*

The IRS has addressed the precise issue involved in the case at bar in two revenue rulings and has determined that promotion from the status of common-law employee to partner does not constitute a "separation from the service." The 1981 ruling noted:

[T]he change in a participant's status from that of a common-law employee to that of a partner does *not* result in a separation from the service in this case since the participant did not die, retire or resign; nor was he discharged from his job, but instead continues to render service in the on-going business. [Rev.Rul 81–267, 1981 C.B. 200 superseding Rev. Rul. 73–414, 1973–2 C.B. 144] [Emphasis supplied].

Although revenue rulings do not constitute "binding precedent," they provide some guidance as to the correct interpretation of the Internal Revenue Code. *St. Louis Bank for Cooperatives v. United States,* 624 F.2d 1041 (Ct.Cl.1982) (citing, *Helvering v. New York Trust Co.,* 292 U.S. 455, 468, 54 S.Ct. 806, 810, 78 L.Ed. 1361 (1933)); *see Hanover Bank v. Commissioner,* 369 U.S. 672, 686–87, 82 S.Ct. 1080, 1088–89, 8 L.Ed.2d 187 (1962). Moreover, the value of the ruling is enhanced by the fact that it is based upon the Internal Revenue Service's long-standing interpretation of the phrase "separation from the service," as excluding situations in which an employee continues to render services to an employer. In interpreting this phrase, the IRS has consistently focused on the extent to which the obligation to provide services continues, despite changes in the employment relationship. The IRS has ruled that discontinuing of compensation, *per se,* to an employee officer of a corporation, who continues to provide services, does not constitute a "separation from the service," since "there must be a complete severance of all relationships between the employer and employee." Rev.Rul. 57–115, 1957–1 C.B. 160, 161.

This court recognizes that in some instances the Internal Revenue Service has relied upon the common-law employment distinction in order to determine whether an employee continues to provide services. For example, in Rev.Rul. 69–647, 1969–2 C.B. 100, the Internal Revenue Service ruled that an employee who retires, but continues to provide part-time advisory service on an irregular basis at thirty percent of his prior salary, is separated from the service." Although, in this ruling, the Internal Revenue Service considered the common-law status as a factor, the key element in determining whether there had been a "separation from the service" was the fact that the employer was not exercising supervision over the taxpayer, nor requiring his compliance with detailed orders or instructions. In addition, there was no established work schedule, nor was it necessary for the employee to obtain the employer's permission to be absent from work. In other words, the employee was not obligated to work and only a minimal obligation to provide services existed.

6. *Judicial Interpretations*

The issue at bar is one of first impression. No case law specifically addresses whether an employee upon becoming a partner, effectuates a "separation from the service." Moreover, the case law presents a paucity of authority for construing the phrase "sep-

aration from the service." The courts which have decided issues of "separation from the service" focused their inquiry on the relationship remaining between the ex-employee and his former employer. *See Fry's Estate v. Commissioner,* 19 T.C. 461 (1952).

In *Fry's Estate,* the Tax Court held that a retiree who no longer served his former employer, but continued to receive his full salary, had not severed his relationship with his employer and thus, was ineligible for preferential tax treatment of his lump-sum pension benefits. *Id.* at 464 (1952). Similarly, an owner-employee who sells his business is not separated from the business if he contracts with the new owner to continue advising that business. *Bolden v. Commissioner,* 39 T.C. 829 (1963). However, a retiree whose only connection to his former business is that he maintained his former office from which he conducted his personal enterprises, and neither served nor received a salary from his former business, has separated from its service. *Barrus v. United States,* 69–1 U.S.T.C. ¶ 9281 (E.D.N.C.1969). However, even though plaintiff has been promoted to partner, he continues to render services and to receive income from the partnership. Plaintiff has not severed his relationship with the partnership, and thus is still in its service.

Although plaintiff assumed new important duties upon becoming a partner, including participating in partnership decisions and exercising supervisory authority,[11] these new duties do not constitute a "separation from the service." Plaintiff cites the Tax Court decision in *Enright v. Commissioner,* 35 T.C.M. (CCH) 1770 (1976), as support for the proposition that a substantial change in the nature of an employee's responsibilities constitutes a "separation from the service." However, the decision in *Enright* and the Second Circuit's decision in *Greenwald v. Commissioner,* 366 F.2d 538

(2d Cir.1966), on which the Tax Court in *Enright* relied, focus on equity considerations involving changes in the business which are not present in the instant case. In *Greenwald,* the taxpayer was the principal officer of a manufacturing corporation which sponsored a profit-sharing plan. The corporation sold its assets, discharged all its employees except the taxpayer, but continued to operate an investment company. Upon its dissolution, the investment company transferred to the taxpayer his entire interest in the profit-sharing plan. The court, considering the equities, found that "[i]t would be harsh to treat taxpayer differently [from the discharged employees who received preferential tax treatment], merely because he stayed on with the same employer after the *radical transformation of its business.*" *Greenwald,* 366 F.2d at 541 [Emphasis supplied].

*Enright,* like *Greenwald,* also involved a manufacturing corporation which sold its assets, discharged all employees except for the taxpayer, and engaged solely in investment activities. In *Enright,* the court noted that substantial changes in the taxpayer's duties were caused by radical changes in the employer's business and work force.[12] Relying on *Greenwald,* the court held that the taxpayer was "separated from the service" upon sale of the business assets. *Enright,* 35 T.C.M. (CCH) at 1773.

The radical business transformation crucial to the decisions in *Enright* and *Greenwald,* is absent in this case. Arthur Andersen's business and the composition of its work force are unchanged; thus, *Enright* and *Greenwald* are inapposite.

## CONCLUSION

■ On the basis of the framework of the Code's retirement plan provisions, their legislative histories, and relevant administrative and judicial decisions, this court finds that a common-law employee's promo-

---

11. Plaintiff's brief at 18–19.

12. The legislative history of the 1954 Code suggests that the composition of the work force is an important factor in determining whether a corporate reorganization constitutes the basis

of an employee's "separation from the service." *S.Rep. No.* 83–1622, 83d Cong., 2d Sess. 54, *reprinted in* [1954] *U.S.Code & Ad.News* 4621, 4685.

tion to partner, by and of itself, does not constitute a "separation from the service" under section 402(e). *A fortiori,* the promotion from associate to partner does not constitute a "separation from the service" pursuant to 26 U.S.C. § 402(e)(4)(A). Consequently, plaintiff is not entitled to preferential tax treatment for the lump-sum distribution he received from his firm's employee retirement plan. Accordingly, defendant's motion for summary judgment is GRANTED, plaintiff's cross-motion for summary judgment is DENIED, and the complaint shall be DISMISSED.

IT IS SO ORDERED.